

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-2001

# In Re: LifeUSA Holding, Inc.

Precedential or Non-Precedential:

Docket 00-1775

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: LifeUSA Holding, Inc." (2001). *2001 Decisions.* Paper 39.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/39

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 5, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1775

IN RE: LIFEUSA HOLDING INC.,

LifeUSA Holding, Inc.,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-07827)
District Judge: Honorable J. Curtis Joyner

Argued: Thursday, December 14, 2000

Before: SCIRICA, FUENTES and GARTH,
Circuit Judges

(Filed: March 5, 2001)

James F. Jorden (Argued)
Waldemar J. Pflepsen, Jr.
Paul A. Fischer
Richard Karpinski
Stephen H. Goldberg
Jorden Burt Boros Cicchetti
 Berenson & Johnson LLP
1025 Thomas Jefferson Street, N.W .
Suite 400 East
Washington, D.C. 20007

William T. Hangley
Michael Lieberman
Hangley Aronchick
 Segal & Pudlin
One Logan Square – 27th Floor
Philadelphia, PA 19103

 Attorneys for Appellant

John M. Elliott
Thomas J. Elliott
Henry F. Siedzikowski (Argued)
Mark A. Kearney
Timothy T. Myers
Brian J. McCormick
Elliott Reihner Siedzikowski
 & Egan, P.C.
925 Harvest Drive
P.O. Box 3010
Blue Bell, PA 19422

 Attorney for Appellees

Evan M. Tager
Mayer, Brown & Platt
1909 K Street, N.W.
Washington, D.C. 20006

Victoria E. Fimea
American Council of Life Insurers
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004–2599

 Attorneys for Amicus–Appellant
American Council of Life Insurers

2

OPINION OF THE COURT

GARTH, Circuit Judge:

LifeUSA appeals the January 13, 2000 order (filed January 19, 2000) of the District Court which certified a class of plaintiffs who had purchased LifeUSA "Accumulator" annuity policies between August 1, 1989 to the present. In its order certifying a class, the District Court focused entirely on the alleged pr e-sale misrepresentations of LifeUSA agents in the marketing, advertising, and sales of the Accumulator, stating ". . . that the gravamen of plaintiffs' claims is that Defendant's sales techniques and advertising constituted an allegedly fraudulent scheme." (A-16). The District Court's focus was not on the alleged post-sale misr epresentations contained in quarterly statements issued to purchasers of the Accumulator.

This emphasis on the pre-sale marketing of the Accumulator is not surprising, considering the allegations of the plaintiffs' Complaint. However, on appeal for the first time, we learned that the plaintiffs' claims were not and are not based upon the sales presentations made by each of LifeUSA's agents. Rather, the plaintif fs have since shifted their emphasis from pre-sale fraud and misconduct in connection with the sale and marketing of the annuities, to post-sale fraud and misconduct: "The gravamen of this case is the nondisclosure of the real inter est rate in every uniform annuity and identical quarterly statement." Appellees' Br., at 20.

Because the plaintiffs have alleged no br each of contract claim in their Complaint and because their claims ar e no longer based on the sales presentations -- the predicate of the District Court's class certification -- but are rather centered on the interest rates reported in post-sale quarterly statements and because the requir ements of Federal Rule of Civil Procedure 23(a) and (b) have not been met, we will vacate the District Court's class certification, which resulted from facts, allegations, and a theory

3

differing materially from the facts, allegations, and theory presented to us on appeal.

We will, however, remand to the District Court to give that Court an opportunity to consider, together with the other issues identified in its summary judgment opinion,[1] if the present interest rate and real interest theory of the plaintiffs as explicated in their briefs on appeal and at oral argument warrant relief and if so, class certification. On remand, if a class meets class certification standards and is then certified, the District Court must also ascertain whether it may exercise jurisdiction over all class plaintiffs consistent with this Court's ruling in Meritcar e, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214 (3d Cir. 1999), and whether jurisdiction pursuant to the Employee Retir ement Income Security Act of 1974 ("ERISA"), 29 U.S.C. SS 1001–1461, is available.

I

Plaintiffs/appellees represent a class of persons who purchased "Accumulator" annuities fr om defendant/appellant LifeUSA Holding, Inc. ("LifeUSA"). The Accumulator is a two-tiered deferred annuity contract,[2] whereby upon the deposit of the purchaser's premiums, a one-time bonus is paid on the amount deposited and interest is then credited to that incr eased amount.

_____

1. See Benevento v. LifeUSA Holding, Inc., 61 F.Supp.2d 407 (E.D. Pa. 1999). The District Court's denial of summary judgment does not bear on Rule 23 class certification. It does not implicate Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, nor the predominance and superiority requirements of Rule 23(b)(3). See Fed. R. Civ. P. 23(a), (b)(3), and see note 11, infra.

2. An annuity is a savings instrument which accumulates sufficient funds to pay a fixed income to the annuitant for a definite period of time or for the annuitant's lifetime. It receives interest on a tax-deferred basis.
A two-tiered annuity has two fund balances and two different credited interest rates. A higher interest rate is credited on accumulated sums used to purchase an annuity payout option, with a lower rate credited on funds payable upon lump sum surrender of the contract.

The Contract Provisions

The Accumulator is a two-tiered annuity because it contains both an "Annuitization Value" and a "Cash Value." The Annuitization Value is the amount paid to the owner if the funds deposited are held under the contract for at least one year and annuitized over at least five years. The contract provides that the owner "will r eceive the Annuitization Value if the policy has been in force for at least one year and the proceeds are paid in a settlement extending over at least five years." (A-510). The Annuitization Value consists of premiums, bonuses credited to such premiums, and accumulated inter est. The contract guarantees that the "minimum interest rate credited to the Annuitization Value is 4%," (id.), but provided that LifeUSA "may declare a higher interest rate than the guaranteed rate." (Id.).

The Cash Value of the contract is the amount the contract owner receives in the event that he or she elects a full or partial lump sum surrender. The Cash Value reflects a front-end load, no bonus, and, if the contract has been in deferral for less than ten years, a credited interest rate lower than that used to calculate the Annuitization Value. The contract explains:

> Cash Value -- Cash Value premium payment are equal to 80% of the first year premium payment and 90% of the premium payment in years two throughfive. Cash Value premium payments after year five are equal to 100% of the payment made.

> Premium paid during the first five policy years in excess of the planned annual premium will be cr edited to the Cash Value in an amount equal to 95% of the excess amount paid. After the first five policy years, any excess premium will be credited to the Cash Value in an amount equal to 105% of the excess amount paid.

> The guaranteed minimum interest rate cr edited to the Cash Value is 4%. We may declar e a higher interest rate than the guaranteed rate. The rate in ef fect for the Cash Value on the policy date is guaranteed for the first policy year. After the first policy anniversary, we

5

> may change the declared rate at our option. The rate declared will never be lower than the guaranteed minimum interest rate.
>
> The interest rate credited to the Cash V alue will be equal to the rate credited to the Annuitization Value after the tenth policy anniversary.

(Id.).

The contract further provides that "Policy values before the Annuity Date are based on 4% interest compounded annually." (Id.). All Accumulator contracts contained a 20-day "free look" period providing the prospective purchaser the opportunity to review the contract and r eturn it within 20 days if not satisfied.3 Significantly, the Complaint filed by the plaintiffs does not contain any claims that LifeUSA has breached any of the contract provisions. Moreover, in depositions, the named plaintiffs testified that they either failed to read or merely glanced at the contracts after they had received them.

LifeUSA's Marketing of the Accumulator

LifeUSA sold the Accumulator through 30,271 independent agents. Indeed, the record discloses that a number of Accumulator purchasers were themselves independent agents who sold annuities. Agents wer e not all trained by LifeUSA. Agents learned about the Accumulator from (1) written materials describing the pr oduct, (2) the contract itself, and (3) from voluntary seminars sponsored by LifeUSA and independent Field Marketing Or ganizations ("FMOs"). Marketing materials sent by LifeUSA to agents were not uniform. Decl. Of Charles Kavitsky P 17, (A-2588) ("While some of the product information LifeUSA created was mailed to all LifeUSA or Allianz agents and FMOs, other items were distributed only to agents and FMOs licensed in a particular state.").

Agents also employed marketing materials generated by FMOs, not LifeUSA. Agents were permitted to use their own

_____

3. Florida law was amended to provide Florida residents, such as Plaintiff Rita Baskin, with a 30-day free look period. McKay Decl. P 42, (A-1198).

sales material, provided that the material was approved by LifeUSA, for the purpose of complying with state r egulation. Agents did not uniformly rely on the marketing materials in learning about LifeUSA's Accumulator. In fact, some discarded the materials entirely. Appr oximately 10–15% of LifeUSA's agents have attended the seminars, and the oral content of the seminars varies.

The Accumulator was sold typically in face-to-face meetings between agents and clients. The District Court found that the Accumulator was not sold accor ding to uniform, scripted sales presentations . (A-22) ("the information provided to each of the plaintiffs by the individual sales agents who sold them their policies was not identical."). Agents used varying sales pr esentations that they developed themselves, based on the prospective purchaser's financial objectives and sophistication, and the agent's knowledge and experience. Agents did not employ LifeUSA's marketing materials uniformly. For example, some agents always used illustrations provided by LifeUSA, while other agents never used them. Four of the plaintiffs testified that they might have received literature from their agents before purchasing the Accumulator , but none of them relied on such literature and none could recall the substance of it.

Plaintiffs' Class Allegations

Plaintiffs' Complaint asserts claims of fraudulent nondisclosures and misrepresentations (Count II), negligent misrepresentation (Count III), breach of duty of good faith and fair dealing (Count IV), negligence (Count V), and unjust enrichment (Count VI). In Count I, plaintif fs seek injunctive relief.

Although the plaintiffs' Complaint alleges that LifeUSA misrepresented the Accumulator annuities provisions and the post-sale quarterly statements fraudulently misrepresented the interest rates cr edited to the annuities, the District Court's class certification opinion was directed entirely to the pre-sale marketing and sales of the Accumulator. With respect to plaintiffs' allegations concerning pre-sale marketing and sales tactics, the

7

Complaint alleges that LifeUSA "induc[ed]" and "train[ed]" agents to misrepresent the terms of the Accumulator "through standardized and uniform misrepresentations and nondisclosures" at point of sale. (Compl.PP 1(a), (b)). Plaintiffs charged that LifeUSA "conceal[ed] and fail[ed] to disclose the true terms of the LifeUSA Accumulator annuity from the purchasers, who are given no written materials from LifeUSA and provided with only an application and the uniform representations of LifeUSA agents based upon LifeUSA's standardized misrepresentations and material omissions taught to the agents." (Id.P 1(c)). They alleged that "LifeUSA marketed its Accumulator annuities through standardized and a uniform pattern and practice of deceptive misrepresentations and nondisclosures to agents." (Id. P 43. See also id. PP 44-47).

Despite the alleged misrepresentations which plaintiffs claim induced them to purchase Accumulator annuities (a claim now apparently abandoned) the plaintiffs also charged that quarterly accounting statements received after purchase of an Accumulator uniformly misrepresented the true interest rate credited to a purchaser's account. In essence, the plaintiffs charged that". . . the interest rate is less than the interest rate misrepresented by LifeUSA in quarterly statements to LifeUSA annuity purchasers." (Compl. P 83(a)).

The District Court granted plaintiffs' Rule 23 class certification motion, relying on LifeUSA's pre-sale activities, holding, as we have earlier noted, that "the gravamen of plaintiffs' claims is that Defendant's sales techniques and advertising constituted an allegedly fraudulent scheme."4 (A-16). While conceding that it was presented with a "close case," (A-12), and that LifeUSA's argument"has some merit," (A-22), the District Court nonetheless ruled that the requirements of Rule 23(a) and (b) were satisfied. With

_____

4. Although the plaintiffs claim that a paragraph of the District Court's class certification opinion refers to interest rates, withdrawal of funds,
penalties, and loads, thereby indicating that the District Court's attention was drawn to the post-sale activities and quarterly statements now stressed by the plaintiffs, a fair reading of the District Court's January 13, 2000 opinion is that these allegations all pertain to the pre-sale sales presentations of the LifeUSA agents.

8

respect to the predominance requirement of Rule 23(b)(3),[5] the District Court stated:

> While [LifeUSA's] argument has some merit in that the information provided to each of the plaintiffs by the individual sales agents . . . was not identical, it nevertheless appears that the source of the plaintiffs' misinformation and/or confusion was the advertising, sales and marketing literature which Life USA prepared and disseminated to its clients and its agents either directly or indirectly through its Field Marketing Organizations ("FMOs").

(A-22) (emphasis added). The District Court emphasized that "the basis for plaintiffs' claims against Defendant is that they [the plaintiffs] and the agents who sold them [the plaintiffs] their policies were intentionally misled by Defendant's sales literature and advertising." (Id.).

The District Court also ruled that the superiority requirement of Rule 23(b)(3) was satisfied, with the following analysis:

> In addition, in light of the fact that the potential class in this matter could number over 280,000, we believe that the class action device is superior to other methods of adjudicating this dispute. Obviously, joinder of all class members would be impracticable and duplicative individual trials would impose an inordinate burden on the litigants and the court. Accordingly, we conclude that the prerequisites of Rule 23(b) are present in this case.

(A-23) (citations and footnote omitted). Oddly enough, the District Court made no mention of the approximately 30,000 independent agents who sold the policies to the plaintiffs. The District Court then certified the following class:

_____

5. Rule 23(b)(3) of the Federal Rules of Civil Procedure requires that after the conditions of Rule 23(a) have been satisfied, the District Court must determine that common questions predominate over any questions affecting only individual members, and that class representation is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The full text of Rule 23(a) and (b) is reprinted in the Appendix, attached to this opinion.

>All persons who purchased an Accumulator annuity
>from Life USA between August 1, 1989 and the pr esent
>and are not officers or directors of Life USA or
>members of the immediate family of any officer or
>director of Life USA or any entity in which Life USA has
>a controlling interest or the heir , successor or assign of
>any such excluded party.

(A-26). LifeUSA has timely appealed.

II

Plaintiffs filed this class action complaint against LifeUSA in the United States District Court for the Easter n District of Pennsylvania. The District Court's jurisdiction was premised on 28 U.S.C. S 1332, as this case is an action between citizens of different states wher ein the amount in controversy ostensibly exceeds $75,000, exclusive of interests and costs. (Compl. P 22). After extensive discovery, on September 29, 1999, the District Court denied LifeUSA's motion for summary judgment, and on January 13, 2000, granted plaintiffs' motion for class certification. (A-3-24). LifeUSA moved before us to appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. On June 5, 2000, this Court granted LifeUSA's motion.

A threshold issue which came to our attention is whether the District Court had diversity jurisdiction under 28 U.S.C. S 1332 over the class, as the plaintif fs alleged.[6] Federal courts have diversity jurisdiction wher e there is complete diversity among the parties, and the amount in controversy meets the jurisdictional minimum. Each member of a class action must independently meet the jurisdictional amount requirement in or der to establish

_____

6. Because we were concerned about the District Court's jurisdiction, we required supplemental memoranda fr om the parties. We called attention to our Court's decision in Meritcare, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 218 (3d Cir. 1999). The memoranda that we received referred not only to diversity but also to possible jurisdiction deriving from employee benefit plans governed by ERISA, 29 U.S.C. S 1001 et seq. Our disposition remanding to the District Court will permit the parties to explore the existence of ERISA jurisdiction with the District Court on remand.

10

diversity jurisdiction under 28 U.S.C. S 1332. Each member who fails to meet the jurisdictional amount must be dismissed from the case. Zahn v. Inter national Paper Co., 414 U.S. 291, 301 (1973) (holding that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case."); Meritcare, 166 F.3d at 218. "Zahn does not require that an entire class action be dismissed for lack of subject matter jurisdiction over some of the class members. Rather, the court is required only to dismiss those class members whose claims appear to a `legal certainty' to be less than the jurisdictional amount." In r e School Asbestos Litig., 921 F.2d 1310, 1315 (3d Cir . 1990).7

As a general rule, the jurisdictional amount is determined from the good faith allegations appearing on the face of the complaint. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). A complaint will be deemed to satisfy the required amount in controversy unless the defendant can show to a legal certainty that the plaintif f cannot recover that amount. Id. at 289. The Complaint here alleges generally that the amount in controversy in this action

_____

7. In Meritcare, this Court ruled that the supplemental jurisdiction statute, 28 U.S.C. S 1367, does not overrule Zahn and thus does not disturb its holding that every class plaintif f must meet the jurisdictional
amount requirement of 28 U.S.C. S 1332. Meritcare, 166 F.3d at 222 (holding that "Section 1367 . . . preserves the prohibition against aggregation outlined in Zahn v. Inter national Paper Co., and Clark v. Paul
Gray, Inc., and thus maintains the traditional rules governing diversity of citizenship and the amount in controversy under 28 U.S.C. S 1332."). See also Trimble v. Asarco, Inc., 232 F.3d 946 (8th Cir. 2000). In so holding, we explicitly rejected the decisions r elied upon here by plaintiffs:
In re Abbott Labs., 51 F.3d 524, 527–29 (5th Cir. 1995), aff'd by equally divided court sub nom., Free v. Abbott Labs., Inc., 529 U.S. 333 (2000), and Stromberg Metal Works, Inc. v. Press Mech., Inc., 77 F.3d 928 (7th Cir. 1996). The Supreme Court has not r esolved this circuit split, affirming the Fifth Circuit by "an equally divided Court," with no opinion.
Free v. Abbott Labs., Inc., 529 U.S. 333 (2000). However, an affirmance by an equally divided Supreme Court has no pr ecedential value. See Rutledge v. United States, 517 U.S. 292, 304 (1996). Therefore, Meritcare remains the law of this Circuit: each member of a class action must independently meet the jurisdictional amount r equirement, and those that do not must be dismissed from the action.

11

exceeds $75,000. (Compl. PP 22, 23). The Complaint also alleges that the named plaintiffs pur chased Accumulator annuities in the amount of $10,000, (id.P 7) (plaintiff Krapf), $75,000, (id. PP 5, 9) (plaintiffs Benevento and Rosenblum), $1,000,000, (id. P 13) (plaintiff Maze), $110,364.44, (id. P 15) (plaintif f Baskin), and $123,332. (Id. P 11) (plaintiff Compaine).

However, whereas the Complaint alleges that "Plaintiffs and all members of the Class sustained damages," (id. P 33), it does not allege that each class member suffered damages in the amount of $75,000. Our remand to the District Court will require that court, among other things, to ascertain whether all members of the putative class suffered injury in the amount of $75,000, or to limit any class that may be certified to individuals with r equisite diversity, as Meritcare requir es.8

III

We review a District Court's decision to certify a class action for an abuse of discretion. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 136 (3d Cir. 2000); In re The Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 299 (3d Cir. 1998). W e may find an abuse of discretion "where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Prudential, 148 F.3d at 299 (citations and internal quotations omitted). A finding is "clearly erroneous when the r eviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Igbonwa, 120 F.3d 437, 440 (3d Cir. 1997) (citations and internal quotations omitted).

_____

8. In this connection, we call the District Court's attention to Georgine v.
Amchem Prods., Inc., 83 F.3d 610, 626 (3d Cir. 1996), aff'd Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). In Georgine, we declined to reach the issue of jurisdiction because it"would not exist but for the [class action] certification." Georgine, 83 F.3d at 623. The Supreme Court held that "[t]he class certification issues are dispositive; because their resolution [there] is logically antecedent to the existence of any Article III
issues, it is appropriate to reach themfirst." Amchem, 521 U.S. at 612 (citing Georgine, 83 F.3d at 623).

12

A

In order to be certified, a class must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997). If these Rule 23(a) requirements ar e satisfied, the court must also find that the class is maintainable under Rule 23(b)(1), (2), or (3). Fed. R. Civ. P. 23(b). See note 5, supra, and Appendix. Rule 23(b)(3) provides that common questions must predominate over any questions affecting only individual members, and class repr esentation must be superior to other available methods for the fair and efficient adjudication of the controversy. The Rule 23(b)(3) predominance inquiry tests whether the class is sufficiently cohesive to warrant adjudication by repr esentation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement. Amchem, 521 U.S. at 623–24.

In this case, the District Court found that the Rule 23(a) requirements had been satisfied, and that the conditions of Rule 23(b)(3) were met. LifeUSA appeals only the District Court's conclusions with respect to Rule 23(b)(3). See Appellant's Br., at 4–5, 23–24. Thus we ar e not concerned on this appeal with the Rule 23(b)(1) and (b)(2) subsections.

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites:

> Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. . . . Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's `close look' at the predominance and superiority criteria.

Amchem, 521 U.S. at 615 (emphasis added and internal quotation marks omitted).

> In adding "predominance" and "superiority" to the qualification-for-certification list, the Advisory

13

> Committee sought to cover cases "in which a class
> action would achieve economies of time, effort, and
> expense, and promote . . . uniformity of decision as to
> persons similarly situated, without sacrificing
> procedural fairness or bringing about other
> undesirable results."

Id. (citation omitted). The Rule 23(b)(3) r equirements protect
the same interests in fairness and efficiency as the Rule
23(a) requirements. Georgine v. Amchem Prods., Inc., 83
F.3d 610, 626 (3d Cir. 1996), af f'd Amchem Prods., Inc. v.
Windsor, 521 U.S. 591 (1997).

Having reprinted in full Federal Rule of Civil Procedure
23(a) and (b) in the attached appendix, we do not list all the
factors here. Rather, in this case, wefind particular
significance in the last recited factor of Rule 23(b)(3)(D)
which stresses "the difficulties likely to be encountered in
the management of a class action." Fed. R. Civ. P .
23(b)(3)(D). We also recognize that because the Rule 23(b)(3)
predominance requirement incorporates the commonality
requirement of Rule 23(a) we must tr eat them together,
Georgine, 83 F.3d at 626, and as we have noted above, even
if Rule 23(a)'s commonality requirement is satisfied,
predominance may not be, as it is mor e demanding.
Amchem, 521 U.S. at 623–24.

Thus our focus is on testing whether the class certified
by the District Court here meets all the r equirements of
predominance (i.e., that common questions predominate
over questions affecting only individual members) and that
class treatment is a superior method of adjudication.
Factored into those questions is the difficulty to be
encountered in the management of a class action.

B

Predominance

As noted, the District Court found that the plaintif fs
satisfied all four of the Rule 23(a) requir ements including
commonality (Rule 23(a)(2)). However, in light of the record,
we find unconvincing the District Court's explanation that:

14

> While [LifeUSA's] argument has some merit in that the information provided to each of the plaintiffs by the individual sales agents who sold them their policies was not identical, it nevertheless appears that the source of the plaintiffs' misinfor mation and/or confusion was the advertising, sales and marketing literature which LifeUSA prepared and disseminated to its clients and its agents either directly or indirectly through its Field Marketing Organizations ("FMO's").

(A-22). Equally unpersuasive is the District Court's statement that "[w]hile there ar e unquestionably individual issues of fact in each case, we find that the pr edominant issues in each such case of necessity are whether or not the defendant intentionally misled and deceived the plaintiffs, through its product and sales information and the training provided to its agents." (A-22-23).

The District Court also noted that the "pr edominance test has also been found to have been easily satisfied in cases involving a common scheme to defraud millions of life insurance policy holders," (A-21), relying on In re The Prudential Ins. Co. of Am. Sales Practices Litig. , 148 F.3d 283 (3d Cir. 1998). LifeUSA had argued that predominance was not established because the purported class members' claims arose from individual and non-standardized transactions involving non-uniform oral misrepresentations. (A-21-22). Because common questions (commonality) must be established before pr edominance can be found, we turn to that element.

Commonality

We have held that class certification is inappropriate in mass tort claims (i.e., asbestos, Georgine , 83 F.3d 610, and tobacco, Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998)) which present questions of individualized issues of liability.

In Georgine, we vacated a district court's certification of a nationwide settlement class of people exposed to asbestos. There we recognized that mass torts involving a single accident may be amenable to class action tr eatment, but observed that "the individualized issues can become

15

overwhelming in actions involving long-term mass torts (i.e., those which do not arise out of a single accident)." Georgine, 83 F.3d at 628. We continued: "Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case." Id. (citation omitted). In addition, we held that the predominance requirement was not satisfied in Georgine, id. at 618, because

> Initially, each individual plaintiff's claim raises radically different factual and legal issues from those of other plaintiffs. These differences, when exponentially magnified by choice of law considerations, eclipse any common issues in this case. In such circumstances, the predominance requirement of Rule 23(b) cannot be met.

Id.9 LifeUSA claims, and we are compelled to agree that on the record before us, in this case the plaintiffs' claims raise "different factual and legal issues from those of other plaintiffs."

In Barnes, we affirmed the decertification of a conditionally-certified statewide class of cigarette smokers who asserted state law claims against a cigarette manufacturer. Barnes, 161 F.3d at 143. We stated: "Because of the individual issues involved in this case -- nicotine addiction, causation, the need for medical monitoring, contributory/comparative negligence and the statute of limitations -- we believe class treatment is inappropriate." Id. at 149 (footnote omitted). While we recognize that Amchem and Barnes are multiple tort cases, the principles and reasoning in those cases are applicable here.

Here the plaintiffs assert claims arising not out of one single event or misrepresentation, but claims allegedly

_____

9. The Advisory Committee Notes to Rule 23(b)(3) provide that "although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." Fed. R. Civ. P. 23(b)(3), Advisory Committee Note.

16

made to over 280,000 purchasers by over 30,000 independent agents where the District Court found that the sales presentations (hence the alleged misr epresentations) were neither uniform nor scripted. Indeed, the District Court, while acknowledging that the claims or defenses of the class must arise from the same event, pattern, or practice, or be on the same legal theory, never identified any uniform misrepresentation made to the plaintiffs nor did it detail any material fact which was not disclosed to class members, and which accordingly, could have misled them. Significantly, in its class certification opinion, the District Court, in discussing commonality in connection with Rule 23(a)(2), found this case to be a "close" one. (A-12).

The District Court's principal reliance on In re The Prudential Ins. Co. of Am. Sales Practices Litig. , 148 F.3d 283 (3d Cir. 1998), in certifying the LifeUSA class was misplaced and unfortunate. In Prudential, we affirmed the certification of a settlement[10] class action involving Prudential's allegedly deceptive sales practices af fecting over 8 million claimants nationwide. However , Prudential, unlike this case, involved uniform, scripted, and standardized sales presentations. The district court opinion in Prudential found that "the oral component of the fraudulent sales presentations did not vary appreciably among class members. Plaintiffs' allegations and the evidence presented to the Court demonstrate that throughout the country, Prudential agents uniformly misled class members with virtually identical oral misrepresentations." In re The Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 514 (D. N.J. 1997) (citation omitted) (emphasis supplied).

In Prudential, the agents were car eer agents who worked exclusively for Prudential. Id. They wer e not independent agents like the 30,271 agents who sold Accumulator annuities to the plaintiffs. Prudential's agents were uniformly trained and Prudential requir ed its agents to use the uniform sales materials which Prudential furnished. Id.

_____

10. A settlement class, as distinct from a class action to be tried, does not implicate trial management problems. Amchem, 521 U.S. at 620.

at 515. Moreover, audits and state regulatory investigations of Prudential revealed that Prudential agents had indeed committed uniform, deceptive sales practices nationwide. Id. at 514.

The facts here in the extensive evidentiary record of this case (depositions, affidavits, declarations, and the like) contrast starkly with the facts found in Prudential. In this case, as we have earlier pointed out, the Accumulator was not sold according to standard, uniform, scripted sales presentations. In fact, the District Court found that "the information provided to each of the plaintiffs by the individual sales agents . . . was not identical." (A-22). LifeUSA agents are independent agents, not "captive" agents, as were Prudential's agents. LifeUSA's agents learn about the Accumulator from written materials describing the product, from the contract itself and from voluntary seminars sponsored by LifeUSA, but only 10-15% of agents attend LifeUSA's seminars. Marketing materials sent to LifeUSA agents are not uniform and many utilized marketing materials generated by Field Marketing Organizations who are not affiliated with LifeUSA.

Moreover, the selling agents did not employ LifeUSA's marketing materials uniformly. Some agents discarded the marketing materials entirely. Agents' sales presentations were individually tailored to each customer's financial objectives. Significantly, when the plaintiffs testified on deposition, they admitted that if they received information from sales agents prior to purchase, they did not rely on it, nor could they recall its substance. Indeed, a number of the plaintiffs failed to read or merely glanced at the contracts, leading to the District Court's observation that "it was incumbent upon the plaintiffs to read these materials, particularly in light of the defendant's twenty-day examination and return policy." (A-17).

Hence, the facts of this case differ markedly from those which were found in Prudential. Accordingly, even if the District Court had not centered its attention on pre-sale LifeUSA marketing activities, as the plaintiffs now claim it should not have, the record is uncompromising in revealing non-standardized and individualized sales "pitches" presented by independent and different sales agents, all

18

subject to varying defenses and differing state laws, thus making certification of individualized issues inappropriate. Thus, the District Court's finding from the r ecord that LifeUSA "has engaged in standardized conduct," (A-13), affecting the class members cannot be sustained.

Moreover, the District Court in denying summary judgment to LifeUSA identified at least four major factual and legal issues that had to be resolved.11 The District Court failed to consider how individualized choice of law analysis of the forty-eight different jurisdictions12 would impact on Rule 23's predominance requir ement, see Georgine, 83 F.3d at 627, as well as individual determinations of causation, adjudications of contract law, reliance, the fiduciary status of defendant, and LifeUSA's defenses of contributory/comparative negligence and limitations.

If commonality in the pre-sale marketing context does not exist, then common questions cannot predominate over individual issues because as Georgine found, each individual plaintiff's claim raises radically differing factual and legal issues from those of other plaintif fs. This, too, is the case here. Accordingly, we cannot uphold the District Court's exercise of discretion in concluding from its findings that commonality and predominance have been demonstrated.

_____

11. See Benevento, 61 F.Supp.2d 407. The four issues were (1) the independence of LifeUSA's agents; (2) plaintif fs' justifiable reliance on defendant's alleged misrepresentations and non-disclosures; (3) whether plaintiff could recover under the economic loss doctrine under Florida and New Jersey law; and (4) whether plaintif fs were entitled to relief for breach of contractual duty of good faith and fair dealing under the laws of Pennsylvania, New Jersey, and Florida. Those issues which included differing and independent defenses available to LifeUSA and which require individualized choice of law analysis to each of the plaintiffs' claims, see Georgine, 83 F.3d at 627 (noting that where variations in state law exist, "the proliferation of disparate factual and legal issues is compounded exponentially."), all operate to discourage class treatment and therefore class certification. Her e, among other litigable matters, LifeUSA will be confronting differing aspects of causation, differing state laws, and different defenses. See Benevento, 61 F.Supp.2d 407.

12. LifeUSA represents that the "Accumulator" has been approved for sale in 47 states and the District of Columbia.

C

Superiority

Having determined that the class certified by the District Court does not meet the "predominance" r equirement of Rule 23(b)(3), we need not dwell at length on the superiority requirement of the rule, inasmuch as failure to meet any of the requirements of Rules 23(a) and (b) pr ecludes certification of a class. See, e.g., W ilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 345 (10th Cir. 1973); Harriston v. Chicago Tribune Co., 992 F .2d 697, 703 (7th Cir. 1993).

It will be recalled that the District Court her e dealt with the "superiority" test in one cursory paragraph:

> In addition, in light of the fact that the potential class in this matter could number over 280,000, we believe that the class action device is superior to other methods of adjudicating this dispute. Obviously, joinder of all class members would be impracticable and duplicative individual trials would impose an inordinate burden on the litigants and the court. Accordingly, we conclude that the prer equisites of Rule 23(b) are present in this case.

(A–23) (citations and footnote omitted). This discussion, of course, gives little indication as to how a trial of this controversy, if tried as a class action, could be efficiently and fairly managed, which is the polestar of Rule 23(b)(3). In Georgine which decertified a class action we concluded in discussing the superiority prong of Rule 23(b)(3) that

> The proposed class action suffers serious problems in both efficiency and fairness. In ter ms of efficiency, a class of this magnitude and complexity could not be tried. There are simply too many uncommon issues, and the number of class members is surely too large. Considered as a litigation class, then, the difficulties likely to be encountered in the management of this action are insurmountable.

Georgine, 83 F.3d at 632–33.

20

In Georgine, admittedly, the size of the purported class was much larger than the class here. It ranged from 250,000 to two million individuals. However, in the present case, LifeUSA has issued well over 280,000 annuities to the class members, and the individual agents who sold the policies numbered over 30,000. Moreover , as we discussed under the section of this opinion dealing with predominance, there are individualized issues that would require individual determinations of defenses, representations, state laws, and the like. 13 Without going into detail as to the management of how a trial which would require proofs of individual claims of the plaintiffs and proofs of varying defenses of the defendant could be conducted, it is sufficient for our purposes to r ecognize that attempting to adjudicate plaintiffs' various claims through a class trial would not only be inordinately time consuming and difficult, but it would impermissibly transgress upon the required standards of fair ness and efficiency.

Thus having concluded that the requirement of predominance has not been met, and that the superiority and the management of the trial could not be fairly and efficiently conducted as a class action, we ar e obliged to hold that the District Court improperly exer cised its discretion in certifying a pre-sale class. Accordingly, we will vacate the January 13, 2000 order of the District Court which certified the plaintiff class in a pr e-sale context, and remand this case to the District Court with instructions to decertify the class.14

_____

13. Although plaintiffs' claims are r elatively modest and separate suits may be impracticable, cf. Georgine, 83 F.3d at 633, that factor by itself is insufficient to overcome the hurdles of predominance and superiority and efficient and fair management of a trial, which Rule 23(b) requires. The individual adjudications of causation, r eliance, LifeUSA's multiple defenses, and application of differing state laws would make trying the plaintiffs' claims in a class action a thor oughly unwieldy endeavor and in the terms of Georgine make it impossible to conclude that this class action is superior to alternative means of adjudication.
14. LifeUSA and Amicus argue that segr egation of individual issues of fact from common issues would violate LifeUSA's Seventh Amendment right to have its claims adjudicated by a single jury. See Appellant's Br.,
at 46 n.35. Although this issue is of serious concer n, we have not addressed it because we have concluded that the putative class must be decertified because it fails the predominance, superiority, and management requirements of Rule 23(b)(3).

IV

Even though we have concluded that the class certification decreed by the District Court cannot be upheld because it rested on the pre-sale marketing, advertising, and "sales pitches" of the Accumulator , we nevertheless are seriously troubled by the constant assertions made by the plaintiffs in their appellate briefs and their appellate arguments that LifeUSA misrepresented interest rates and amounts all of which apparently stem not fr om the pre-sale representations but from quarterly statements which could only come about subsequent to the purchase of the annuities by the plaintiffs. As a consequence, we asked at oral argument for post-argument memoranda which would expound upon the real interest rate and the amounts actually paid.

Plaintiffs furnished us with exhibits detailing calculations which allegedly illustrate the actual interest rate credited assuming daily compounding of interest. Those computations purported to show that, assuming daily compounding, the amount of interest credited represented a lower interest rate than the rate stated on the quarterly statements. In response, LifeUSA argued that plaintiffs' calculations incorrectly assumed that LifeUSA r epresented, in quarterly statements, that it would engage in daily compounding of the declared current rate of interest. Instead, it argued, the contract, the quarterly statements, and the marketing literature circulated to agents demonstrate that contract values are calculated based on an annual compounding of the declared current rate.15

We had anticipated that these submissions would clarify the issue of post-sale misrepresentations which was emphasized by the plaintiffs in their appellate briefs and oral argument. We did so because, among other
_____

15. Additionally, LifeUSA asserts that, even if quarterly statements uniformly failed to disclose the actual inter est rate, individualized issues
remain with respect to this theory of liability, precluding class certification. It states that multiple variants of the quarterly statements
existed, and that individual determinations of reliance, on the agents' representations as well as on quarterly statements themselves, would be required in order to determine liability.

considerations, plaintiffs had not claimed and do not claim, any breach of contract in their Complaint. This is not surprising to us because the contract entered into by each of the named plaintiffs provides no mor e than a guaranteed 4% interest rate and also provides for dif ferent features of payments as well as representing that interest would be compounded annually. Thus we found it difficult to understand the shift in the plaintiffs' emphasis and even more difficult to understand allegations of standard uniformity in LifeUSA's representations.

However, we found that we could not r econcile the post-argument briefs nor could we determine whether in light of the arguments therein made, a class meeting the standards of Rules 23(a) and (b) could be certified. In any event, it is not our function to make these determinations, but we would be loath to disregard these allegations just because they had not been ruled upon by the District Court. It is true that we had anticipated that the post-ar gument submissions would be conclusive in establishing either plaintiffs' claims or LifeUSA's defenses. Unfortunately this was not to be, and because we are not factfinders, see Pullman-Standard v. Swint, 456 U.S. 273, 291 (1982) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts"); Chalfant v. The Wilmington Inst., 574 F.2d 739, 749-750 & n.3 (3d Cir. 1978) (Garth, J., dissenting), we now determine that the questions of alleged post-sale representations and standard uniformity as well as all requirements of Rule 23(a) and (b) should be found in the first instance by the District Court just as the District Court should resolve those issues it identified in its summary judgment decision. We suggest that if the plaintiffs desire to seek class certification again based on these post-sale activities of LifeUSA rather than on the marketing of the policies, it is the District Court that should consider and act upon such submissions.

It may be, however, that when the District Court takes evidence of the post-sale representations and activities of LifeUSA it may determine that there ar e no grounds for relief or that if the grounds for r elief exist, that they do not comply with the stringent requirements of Rules 23(a) and 23(b) due to individualized claims and individualized

23

defenses, and the requirements of pr edominance, superiority, and the management of a fair and efficient trial. Accordingly, our direction to decertify the class which was based on pre-sale activities will not preclude consideration by the District Court of claims with respect to post-sale activities that are viable and perhaps certifiable.

V

We have determined that the class certified by the District Court looking to pre-sale actions of LifeUSA was an abuse of the District Court's discretion because the record does not support the findings made which ar e required by Rules 23(a) and (b). Nor does the recor d support the District Court's conclusions leading to a certification of a pre-sale class. However, because of the consistent arguments of the plaintiffs which emphasize post-sale activities of LifeUSA and post-sale misr epresentations with respect to interest, we will remand to the District Court for consideration of those claims and if applied for by the plaintiffs for consideration as to whether those post-sale claims comply with Rules 23(a) and (b), all in accor dance with the foregoing opinion.

24

APPENDIX

Rule 23. Class Actions

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numer ous that joinder of all members is impracticable, (2) there ar e questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the repr esentative parties will fairly and adequately protect the inter ests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prer equisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with r espect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their inter ests; or

(2) the party opposing the class has acted or r efused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with r espect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any

litigation concerning the controversy alr eady commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(a), (b).

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

26