Larry DAWSON, Individually and on Behalf of Others Similarly Situated, Plaintiffs,

v.

DOVENMUEHLE MORTGAGE, INC. and John Does One Through Fifty, Defendants.

No. 00–CV–6171.

United States District Court, E.D. Pennsylvania.

April 1, 2003.

Stuart A. Eisenberg, McCullough & Eisenberg, P.C., Warminster, PA, for plaintiffs.

Thomas B. Roberts, Vincent J. Marriott, III, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for defendants.

## *MEMORANDUM*

GILES, Chief Judge.

Larry Dawson ("Plaintiff"), brings this action, individually and on behalf of others allegedly similarly situated, against Dovenmuehle Mortgage, Inc. ("DMI"), a mortgage servicing company, which services plaintiff's mortgage, and John Does One through Fifty ("Does"), certain individuals, partnerships, corporate entities, attorneys and other persons who may be involved in the scheme alleged, but whose identity and location are not yet known to plaintiff. He alleges breach of contract, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), misrepresentation, and fraudulent misrepresentation, and demands statutory and compensatory damages, disgorgement by DMI of any sums collected, injunctive relief, and attorney's fees and costs.

The court now considers plaintiff's Motion for Class Certification pursuant to Fed. R.Civ.P. 23. For the reasons that follow, the Motion for Class Certification is denied.

## I. BACKGROUND

Plaintiff's mortgage is serviced by DMI, who is a subservicer for Argo Federal Savings Bank ("Argo" or "Mortgagee"). He brings this action on behalf of himself and on behalf of a class of persons whose mortgages were or are serviced or subserviced by DMI.

Plaintiff owns 1902 Lenox Street, Harrisburg, Pennsylvania. (Pl.'s First Am. Class Action Compl. at ¶ 12b.1.) On June 30, 1998, he borrowed $50,400 from Argo and gave a Note for $50,400 (the "Note") and a mortgage on the property. (*Id.* at ¶ 12b.2.) On August 25, 1999, he filed for bankruptcy protection under 11 U.S.C. Chapter 7. (*Id.* at ¶ 12b.4.) Attorneys representing DMI as a servicer for Argo entered their appearance in plaintiff's bankruptcy proceeding. (*Id.* at ¶ 12b.5.) Plaintiff alleges that "no other bankruptcy-related services were performed by or on behalf of DMI during these proceedings."

(Pl.'s Mem. In Supp. Of Class Cert. at 7.) Throughout the bankruptcy proceedings, plaintiff alleges that he continued to pay to DMI principal and interest in accordance with the terms of the Note. (Pl.'s First Am. Class Action Compl. at ¶ 12b.4.)

By letter dated September 10, 1999, DMI billed plaintiff $450 for the cost of DMI's attorneys' fees claimed to have been incurred in relation to the bankruptcy proceeding. (Pl.'s First Am. Class Action Compl. at ¶ 12b.10.) Upon receipt of the fee notice, plaintiff alleges that he contacted DMI by phone to inquire about the notice, and was told that it reflected "a fee that they charge to cover their representation." (Def.'s Resp. In Opp'n to Pl.'s Mot. for Class Cert. at 8.; Dawson Dep. at 15.) Plaintiff claims that DMI intentionally disguised the purpose of these charges on his account summary. (*Id.* at ¶ 12b.13.) When he did not pay the charge, DMI wrote him on May 4, 2000, stating "DMI will not pursue recovery of the $450 in attorneys' fees incurred during the course of the bankruptcy proceeding." (*Id.* at ¶ 12b.11.) However, by letter dated October 3, 2000, DMI again billed plaintiff for attorneys' fees related to his bankruptcy proceeding. (*Id.* at ¶ 12b.12.) Plaintiff did not pay. Instead, he brought this action alleging that DMI wrongfully engaged in a practice of systematically charging him, and others similarly situated, unauthorized fees, that is fees allegedly incurred in relation to a bankruptcy proceeding but, which were not approved by the Bankruptcy Court.

Earlier, this court granted, in part, DMI's Motion to Dismiss the First Amended Class Action Complaint pursuant to Rule 12(b)(6). All federal claims were dismissed; however, plaintiff's state law claims survived. *See Dawson v. Dovenmuehle Mortgage, Inc.*, No. Civ.A.00–6171, 2002 WL 501499 (E.D.Pa. April 3, 2002). The court retained jurisdiction of the state law claims in the interests of fairness to both parties and judicial economy. *Id.* at *7.

Subsequently, plaintiff filed this Motion for Class Certification alleging that DMI engaged in a variety of conduct that violated contract and state consumer laws. Specifically, he asserts that DMI: 1) pursued the collection of attorneys' fees and costs that were allegedly incurred during debtors' bankruptcy proceedings, which were not authorized by contract, law or order of court; 2) assessed illegal fees and costs against members of the class while they were in bankruptcy, without revealing the purpose, nature and reason for the charges to the debtors, the court, or other persons in interest, until the debtors were out of bankruptcy; and 3) misrepresented to the debtors the purpose, nature, and reason for the charges. (Pl.'s Mot. for Class Certification at 1.)

Plaintiff asserts that the bankruptcy related attorneys' fees charged to him and the putative members of the class are not authorized by law or contract. As a result of DMI's continuing breach of the generic contracts of mortgage and DMI's violations of the Pennsylvania UTPCL, it is claimed that he and prospective class members are entitled to damages and other appropriate compensation. (Pl.'s Mot. for Class Certification at 2.)

The nation-wide class for which plaintiff seeks certification consists of:

All persons in the United States, who, at any time during the period from December 6, 1994 to the present, were debtors or joint debtors in bankruptcy proceedings pursuant to 11 U.S.C. Chapters 7, 11, 12, and/or 13, or who were co-debtors or persons in these bankruptcy proceedings, in which [DMI], in its capacity as mortgagee, servicer and/or subservicer of mortgage loans imposed upon members of the Class charges for attorneys' fees and costs allegedly incurred during the bankruptcy proceedings and which are not permitted by law, contract and/or order of court.

(Pl.'s Mot. for Class Certification at 2).

Further, plaintiff alleges that the following questions of law or fact are common to all members of the class:

a. Does DMI have any entitlement in contract, equity or law to these unilaterally imposed post-petition attorneys' fees and costs?

b. Does the failure of DMI to seek and achieve the [Bankruptcy] Court's approval of these post-petition attorneys'

fees and costs bar collection or attempts at collection of these illegal attorneys' fees and costs?

c. Are the attorneys' fees and costs charged reasonable under the circumstances, and, if not, did DMI breach its contract with plaintiff?

d. Does DMI's imposition of and its attempts to collect these illegal attorneys' fees and costs constitute:

   i. Breach of its contracts with plaintiff and members of the class;

   ii. Constructive fraud;

   iii. Fraudulent Misrepresentation;

   iv. Unfair Trade Practices.

e. Have the members of the class, including plaintiff, been caused to suffer damages as a result of the acts of the defendant?

f. Are plaintiff and the members of the class entitled to recovery of damages as follows:

   i. Compensatory damages;

   ii. Other special damages;

   iii. Statutory damages;

   iv. Treble damages or other damages as a multiple of compensatory and other special damages;

   v. Costs;

   vi. Attorneys' fees;

   vii. Injunctive relief;

   viii. Disgorgement by defendant of any sums collected, interest and profits thereon; and

   ix. Such other relief as the court may deem appropriate.

(Pl.'s Mot. for Class Certification at 16–18).

## II. DISCUSSION

### A. *Legal Standard for Class Certification*

Plaintiff argues that all of the requirements of Rule 23(a) as well as the conditions of Rule 23(b)(3) are satisfied.

A party seeking class certification must establish that it satisfies each of the four elements of Rule 23(a) of the Federal Rules of Civil Procedure: (1) numerosity; (2) com-

monality; (3) typicality; and (4) adequacy of representation, as well as at least one of the separate provisions of Rule 23(b), before class certification will be granted. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir.1998). Rule 23(a) of the Federal Rules of Civil Procedure reads as follows:

> **(a) Prerequisites to a Class Action.** One or more of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative party will fairly and adequately represent the interests of the class.

Fed.R.Civ.P. 23(a).

Once plaintiff has met the criteria of Rule 23(a), he must show that his action is maintainable under Rule 23(b)(1), (2), or (3) of the Federal Rules of Procedure. Here, plaintiff requests the court certify the class pursuant to Rule 23(b)(3), which requires that:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3).

As the court explains below, plaintiff has failed to satisfy the requirements of "predominance" and "superiority" as mandated by Rule 23(b)(3), and therefore the court will not address Rule 23(a) criteria.

### 1. *Predominance*

The predominance inquiry demands "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). This measures "whether the class is sufficiently cohesive to

warrant certification." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir.2001). In contrast to the typicality and commonality requirements, predominance is a stricter standard to meet. *Id.*

Plaintiff alleges that he and the putative class will seek redress for DMI's violations of Pennsylvania's UTPCL, as well as breach of contract, misrepresentation, and fraudulent misrepresentation. Central to plaintiff's claim is that DMI breached its contract with plaintiff and class members by charging to debtors unauthorized bankruptcy related attorneys' fee. The mortgage contract[1] between plaintiff and defendants entitles DMI to reasonable attorneys' fees under certain defined circumstances, such as mortgage foreclosure. (Pl.'s. First Am. Class Action Compl. at ¶ 21.a.)

Plaintiff concedes that " a determination of what constitutes reasonable attorneys' fee under ... the mortgage, ... may require inquiry into bankruptcy law." (Pl.'s. Reply Brief Supp. Class Cert. at 2.) Further, plaintiff admits that during bankruptcy proceedings DMI's conduct could potentially include:

> Filing entries of appearance, proofs of claims, motions for relief from automatic stay, adversary proceedings and other documents, which may have resulted in any one of the following: (a) approval, modification or denial of the proofs of claim or any amended proofs of claim, manifested by appropriate Orders of Court; (b) approval or denial of the specific prayers for relief manifested by appropriate Orders of Court; or (c) stipulations setting forth agreements of the parties, manifested by appropriate Orders of Court.

(Pl.'s Mem. In Supp. Of Class Cert. at 3.)

Such an inquiry into reasonableness requires an investigation of each putative class member's situation. DMI's specific legal services varied from case to case and as such, probes would have to be conducted into each members claims in order to determine the "reasonableness" of the attorneys' fees charged. Moreover, this court is not convinced that it has jurisdiction to intrude upon the disposition of bankruptcy proceedings conducted outside of this jurisdiction. Bankruptcy Judges presiding outside this jurisdiction may have treated contested attorneys' fees in a myriad of ways.

It is clear that individual issues will predominate over common questions of law and fact. "The predominance requirement is not met when there exists a great number of significant questions peculiar to the individual members of the class." *Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 400 (D.N.J.1998) (citing *Georgine v. Amchem Prodts. Inc.,* 83 F.3d 610, 624 (3d Cir.1996)).

Similarly, questions particular to the individual members of the class arise with regard to claims of violations of the UTPCPL. It requires the plaintiff to prove by clear and convincing evidence all of the elements of common law fraud, which include: (1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may either be actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage as a proximate result. *Dawson,* 2002 WL 501499 at *6 (citing *Wittekamp v. Gulf & Western, Inc.,* 991 F.2d 1137, 1142 (3d Cir.1993), *cert. denied,* 510 U.S. 917, 114 S.Ct. 309, 126 L.Ed.2d 256 (1993)).

---

1. Provision seven (7) of the mortgage agreement reads as follows: If borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's right to the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

The Advisory Committee Notes to Rule 23(b)(3) indicate that class certification may be inappropriate when there is a fraud claim central to the issue of liability:

[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

Fed.R.Civ.P. 23(b)(3) advisory committee's note.

"The successful maintenance of a cause of action for fraud includes, *inter alia,* a showing that the plaintiff acted in reliance on the defendants misrepresentations. Because such a showing would normally vary from person to person, the fraud cause of action is not generally appropriate for resolution in a plaintiff-class action." *Strain v. Nutri/System, Inc.,* No.CIV.A.90–2772, 1990 WL 209325, *9 (E.D.Pa. Dec.12, 1990). Plaintiff asserts that DMI intentionally mischaracterized bankruptcy-related attorneys' fees as "other taxes," miscellaneous expenses, corporate advances, or the like, on plaintiff's and class members' accounts. (Pl.'s First Am. Class Action Compl. at ¶ 36.) Plaintiff states he and the putative class relied on these material misrepresentations and were subsequently induced not to react to the imposition of the attorneys' fees. (*Id.* at ¶ 37). The level of reliance, however, will vary from person to person and will be dependent upon the specific misrepresentations in each instance. Because reliance is an essential element that must be proven in UTPCPL claims and other state consumer fraud claims, the court finds that individual questions of law and fact predominate over any common questions with respect to the pending claim, thereby precluding class certification pursuant to Rule 23(b)(3).

Moreover, plaintiff has failed to meet the burden of providing "an extensive analysis" of state law variations to determine whether there are "insuperable obstacles" to class certification. *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir.1986); *Lyon v. Caterpillar, Inc.,* 194 F.R.D. 206, 219 (E.D.Pa.2000); *Carpenter v. BMW of North America, Inc.,* No.CIV.A.99–214, 1999 WL 415390, *1 (E.D.Pa. June 21, 1999). The Third Circuit has held that there must be an individualized choice of law analysis for each of plaintiff's claims. *Lyon,* 194 F.R.D. at 211 (citing *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3d Cir.1996)). Courts have denied class certification for a plaintiff's failure to provide a detailed analysis and explanation as to how state law variations do not pose "insuperable obstacles" to class certification. *Id.* at 222. *See also In re LifeUSA Holding Inc.,* 242 F.3d 136, 147 (3d Cir.2001) (The third circuit reversed the district court's class certification because it "failed to consider how individualized choice of law analysis of the forty-eight different jurisdictions would impact on Rule 23's predominance requirement."). Members of the putative class will come from various jurisdictions and "choice of law may pose major problems. The first is the danger of an unwarranted intrusion into another state's legal affairs through a mistaken application of its laws." *In re School Asbestos Litigation,* 789 F.2d at 1011. Where potentially the law of all fifty (50) states, as opposed to federal, is applicable to the class' cause of action the "differences in state law will compound the disparities among class members." *Carpenter,* 1999 WL 415390, at *1.

Plaintiff has not undertaken any type of choice of law analysis and has failed to demonstrate that state law variances are so minimal they will not present "insuperable obstacles" to class certification and if, the court is convinced that the litigation cannot be managed, denial of certification is appropriate. *In re School Asbestos Litigation,* 789 F.2d at 1011.

### 2. Superiority

In addition to predominance, Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." *Georgine*, 83 F.3d at 633 (quoting Fed.R.Civ.P. 23(b)(3)). Because class certification is denied based on plaintiff's failure to satisfy the predominance requirement of Rule 23(b)(3), "we need not dwell at length on the superiority requirement of the rule, inasmuch as failure to meet any of the requirements of Rules 23(a) and (b) precludes certification of a class." *In re LifeUSA Holding, Inc.*, 242 F.3d at 147.

As discussed previously, the issues of determining reasonable attorneys' fees and plaintiffs' reliance on DMI's alleged misrepresentations involves an individual investigation of each member' claims, which presents to this court insurmountable obstacles to certification. The problem is magnified exponentially by the problems posed by choice of law, rending the class action device as an inadequate mechanism by which to proceed. Class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### III. Conclusion

For the foregoing reasons, plaintiff's Motion for Class Certification is denied.

An appropriate order follows.