Robert L. MOORE and Jeannette S. Parry, Petitioners–Appellants,

v.

PAINEWEBBER, INC., Respondent–Appellee.

Docket No. 01–9212.

United States Court of Appeals, Second Circuit.

Argued: May 31, 2002.

Decided: Oct. 10, 2002.

Edward Labaton, Goodkind Labaton Rudoff & Sucharow (Joel H. Bernstein, James W. Johnson, Michael Hanzman, Marc H. Edelson, Ira Neil Richards, on the brief), New York, NY, for Petitioners–Appellants.

Kenneth B. Forrest, Wachtell, Lipton, Rosen & Katz (Jeffrey M. Wintner, Dhananjai Shivakumar, Hannah Berkowitz, Jacqueline O. LiCalzi, on the brief), New York, NY, for Respondent–Appellee.

Before: STRAUB and SOTOMAYOR, Circuit Judges, and GOLDBERG,* Judge.

SOTOMAYOR, Circuit Judge.

Plaintiffs appeal from a decision of the United States District Court for the Southern District of New York (Keenan, J.) denying class certification under Fed. R. Civ. P 23(b)(3). Plaintiffs based their RICO and fraud claims on the oral misrepresentations made by PaineWebber's brokers, arguing that PaineWebber engaged in a common scheme to misrepresent one of its products. The district court determined that individual factual questions regarding the specific oral misrepresentations provided to each potential class member predominated over any questions of law or fact common to the potential class because the misrepresentations varied materially among individual plaintiffs. We hold that class certification of fraud claims based on oral misrepresentations is appropriate only where the misrepresentations relied upon were materially uniform, allowing such misrepresentations to be demonstrated using generalized rather than individualized proof.

## BACKGROUND

We assume familiarity with the facts of this case as outlined in our previous decision, *Moore v. PaineWebber, Inc.,* 189 F.3d 165 (2d Cir.1999), and the district court's prior opinions, *Moore v. Painewebber, Inc.,*

---

* The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

Nos. 96 Civ. 6820(JFK), 97 Civ. 4747(JFK), 1998 WL 661486, (S.D.N.Y. Sept. 24, 1998); *Moore v. Painewebber, Inc.,* Nos. 96 Civ. 6820(JFK), 97 Civ. 4757(JFK), 2001 WL 228120 (S.D.N.Y. Mar. 7, 2001), and recount only those facts relevant to the instant appeal.

PaineWebber is a financial services company that offers a variety of investment and insurance products to its clients. Plaintiffs allege that changes in the federal tax code in the late 1980s prompted many investors to reduce the amount of money they put into IRAs, thus making the IRA business less lucrative for PaineWebber. Plaintiffs further allege that, in order to recapture its lost IRA investment stream and boost life insurance sales, Paine-Webber decided to market a universal life insurance policy—the "Provider"—as if it were an IRA or an IRA substitute.

According to the complaint, Paine-Webber used a variety of deceptive techniques in its attempt to present the Provider as a kind of IRA. PaineWebber is alleged to have advertised the Provider as a retirement savings plan offering "cash accumulation," competitive interest rates, and tax-advantaged status. The size of the investment that clients were told to make in their Provider accounts—$2000 each year—was allegedly chosen because $2000 is both the maximum and the typical amount that people contribute annually to IRAs. PaineWebber, in its marketing of the Provider, deliberately avoided insurance-associated terms like "premium" and instead used misleading words such as "contribution" or "deposit." Finally, plaintiffs allege PaineWebber's internal training materials explicitly acknowledged that the targeted customer base could be easily persuaded to invest large amounts of money in the Provider, so long as the customers did not think of the Provider as a life insurance policy. PaineWebber did tell some clients that purchasers of the Provid-er would get life insurance coverage, but presented this insurance as an added benefit rather than the investment itself. In reality, the Provider was a universal life insurance policy and nothing more.

The named plaintiffs, Robert L. Moore and Jeannette S. Parry, are both Paine-Webber clients who were sold the Provider package in 1989. They both allege that they were approached by PaineWebber and told that the Provider would be a good replacement for their existing IRAs. Moore contributed $2000 to the Provider in 1989 and each year thereafter through the filing of the complaint in 1997. Parry contributed $2000 in each of 1989, 1990, 1992, and 1993. After they had "invested" in the Provider, plaintiffs received account statements in the mail that detailed the full range of the portfolios they held with PaineWebber. In these statements, PaineWebber listed the annual Provider "deposits" as part of plaintiffs' holdings, along with their stocks, bonds, and so forth, as if the Provider were a cash savings plan. But the moneys paid for the Provider were not held as deposits in an account; instead, they were used to pay insurance premiums on a universal life insurance policy. As a result, at least for the first several years, the cash value of the Provider was substantially less than the actual dollar amount contributed. Both named plaintiffs retain their "investments." Nevertheless, they assert that had they known the true nature of the Provider, they would not have purchased it, but instead would have invested their money in actual IRAs. Moore and Parry brought class action against PaineWebber, alleging violations of RICO and common-law fraud. These actions were consolidated in the district court.

The district court dismissed the consolidated action for failure to state a claim, holding that plaintiffs lacked standing un-

der RICO because the alleged misrepresentations were not the proximate cause of their damages. The Second Circuit reversed. *See Moore v. PaineWebber, Inc.,* 189 F.3d 165 (2d Cir.1999). On remand, plaintiffs moved for certification of the class under Fed.R.Civ.P. 23(b)(3). Defendant opposed certification on the grounds that the plaintiffs' claims were not typical of the class, plaintiffs lacked the ability to protect the class fairly and adequately, and questions of law or fact common to the class members did not predominate over questions affecting only individual class members.

In support of their motion for class certification, plaintiffs presented evidence that PaineWebber developed a centralized marketing scheme through which it marketed the Provider as an IRA alternative. Specifically, plaintiffs demonstrated that PaineWebber prepared marketing materials and information pieces presenting the Provider as an IRA alternative; PaineWebber's brokers used these materials in promoting the Provider. Moreover, PaineWebber held training sessions in which brokers were instructed to emphasize the Provider's investment features. One of these seminars, "David Macchia Presents: The Alternative Plan," encouraged brokers to market the Provider as an IRA alternative while downplaying the insurance aspects. A memo to all divisional vice-presidents stated that it was PaineWebber's "intention to mobilize our efforts around the David Macchia client seminar," and commanded the vice-presidents to memorize a script prior to an upcoming marketing meeting. Plaintiffs further point to a document entitled "New York Version—Sales Presentation," which again emphasized the investment aspects of the Provider package, and a certification submitted by a former PaineWebber divisional vice-president, which discusses the fact that the "overriding theme" of all the marketing materials prepared by PaineWebber was that, if sales brokers wished to sell the Provider, they could not focus on the insurance aspects of the product.

Plaintiffs also presented evidence that PaineWebber's brokers used at least three different telephone scripts for "cold calling" prospective investors. One script states that the "Provider is a universal life insurance policy" that can be used to "supplement ... retirement benefits" by offering a "competitive interest rate and tax-free income before *and* after retirement." A second script states that the Provider is an "exciting new retirement product" "featuring a universal life insurance policy." The third does not mention life insurance at all, but simply refers to the Provider as a "retirement program" or a "systematic savings program, $2000 a year like [an] IRA, [that] will compound under a tax umbrella just like [an] IRA, but will pay you or your estate all of its benefits free of any tax." These scripts conclude with a suggestion from the broker for further informational meetings.

Finally, plaintiffs submitted complaint letters from purchasers of the Provider policy, who all alleged that their PaineWebber broker had induced them to purchase the Provider by falsely representing the policy as a retirement investment program. Some purchasers claimed that they were never informed that life insurance was a part of the Provider program, and thought they were purchasing an IRA. Others were informed that life insurance was attached for tax purposes, but that they would not be charged any administrative fees for the insurance and that the funds they invested would remain fully accessible. Still others were told that charges would be levied against their account for a life insurance policy, but that the Provider rate of return would be high enough that, notwithstanding the deduction of these charges, the Provider invest-

ment would still yield a return of approximately eight percent.

In opposition to plaintiffs' motion, PaineWebber submitted affidavits from brokers who testified that they did not employ a standardized sales presentation, and had not participated in the training sessions plaintiffs mentioned.

The district court held that plaintiffs had not shown that class-wide issues predominated over issues subject to individualized proof. The district court reasoned that fraud claims founded upon oral misrepresentations are not appropriate matters for class certification under Rule 23(b)(3) absent proof that the oral misrepresentations were materially indistinguishable. Finding no evidence of uniformity in the present case, the district court denied the motion for class certification. This appeal followed.

## DISCUSSION

### I. Standard of Review

■ We review a district court's decision regarding class certification under Fed.R.Civ.P. 23 for an abuse of discretion. *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132 (2d Cir.2001). We are, however, "noticeably less deferential to the district court when that court has denied class status than when it has certified a class." *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999) (quoting *Lundquist v Sec. Pac. Auto. Fin. Servs. Corp.,* 993 F.2d 11, 14) (2d Cir.1993)) (internal quotation marks omitted).

### II. The Predominance Requirement and Oral Misrepresentations

In order to qualify for class certification under Fed.R.Civ.P. 23(b)(3), plaintiffs in the proposed class must first demonstrate that they satisfy the four requirements of Fed.R.Civ.P. 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. If these criteria are met, the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

■ "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). It is a more demanding criterion than the commonality inquiry under Rule 23(a). *Id.* at 623–24, 117 S.Ct. 2231. Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof. *Visa Check,* 280 F.3d at 136.

PaineWebber argues that fraud claims founded upon oral misrepresentations may not form the basis of a class action unless the misrepresentations are materially uniform in nature. On appeal, plaintiffs argue that liability for the allegedly fraudulent misrepresentations follows from a common course of conduct and, thus, class-wide issues predominate over individualized factual and legal issues. Plaintiffs also assert that the district court abused its discretion in finding that the misrepresentations were not sufficiently uniform to satisfy Rule 23(b)(3)'s predominance requirement.

As an initial matter, we must decide whether the district court applied the correct legal standard when it held that oral misrepresentations are not amenable to class certification unless they were materi-

ally uniform in nature. The Advisory Committee's Notes speak to this issue directly:

It is only where ... predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966 amendment).

 Contrary to plaintiffs' argument, liability for fraudulent misrepresentations cannot be established simply by proof of a central, coordinated scheme. Rather, to recover for a defendant's fraudulent conduct, even if that fraud is the result of a common course of conduct, each plaintiff must prove that he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss. Fraud actions must therefore be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof. Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, however, class certification is improper because plaintiffs will need to submit proof of

the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims. *Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir.1977) ("[T]he key concept in determining the propriety of class action treatment is the existence or nonexistence of material variations in the alleged misrepresentations."). As these are questions that more than likely will be the central disputed issues in a fraud action, certification of the class will not negate the need for a series of mini-trials where there are material variations in the nature of the misrepresentations made.

The question posed in the present case is whether the oral misrepresentations made to the individual plaintiffs fall within the first or the second category. The district court followed the lead of the Third, Fourth, Fifth, Sixth, and Seventh Circuits, which have held that oral misrepresentations are presumptively individualized. These circuits therefore treat class certification of fraud claims based upon oral misrepresentations as improper, absent a showing that the misrepresentations were made pursuant to a written, standardized sales script and that the sales agent participated in a common training program that emphasized uniformity in sales techniques. *See, e.g., Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir.1998) (holding that fraud claims "based substantially on oral rather than written communications are inappropriate for treatment as class actions unless the communications are shown to be standardized") (internal quotation marks omitted); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998) ("The district court took testimony from more than three hundred class members in an effort to obtain a purportedly representative sample of the representations and communications by

GM. That it was necessary to do so strongly suggests to us that class-wide relief was improper."); *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957–58 (7th Cir.1989) (holding that issues specific to each plaintiff predominated because the major issue in contention—whether the insurance company had fraudulently informed the plaintiffs that they could only recover under an insurance policy if they submitted to a polygraph test—depended upon evidence of the individual oral communications between the defendant and each plaintiff); *Grainger*, 547 F.2d at 307–08 ("It is possible, although unlikely, that oral misrepresentations can be uniform, e.g., through use of a standardized sales pitch by all the company's salesmen. . . . If plaintiffs cannot [demonstrate uniformity], then the district court may quite properly refuse to certify a class on the grounds that common questions of law or fact do not predominate."); *see also Cohn v. Mass. Mut. Life Ins. Co.*, 189 F.R.D. 209, 215 (D.Conn. 1999) (noting that it is "common sense" that sales presentations will vary in material respects, depending upon "the nature of the questions asked by the purchaser, the purchaser's relationship with the salesperson, and the salesperson's perception of the purchaser's needs, objectives, and financial sophistication"); *Rothwell v. Chubb Life Ins. Co.*, 191 F.R.D. 25, 30 (D.N.H. 1998) ("[M]ost courts hold that certification is not appropriate when the plaintiffs' claims are based on oral representations, which, by their nature, tend to be particularized. Only when the variations in the representations are immaterial and, thus, the representations are essentially uniform, do courts generally consider certifying such classes.") (citations omitted).

The Third Circuit has considered this issue in the greatest depth. In *In re Prudential Insurance Co. of America Sale Practices Litigation*, the Third Circuit reviewed a district court's certification of a class of Prudential policyholders. 148 F.3d 283 (3d Cir.1998). The complaint alleged that Prudential engaged in a systematic fraudulent marketing scheme, which it implemented through the use of false and misleading sales presentations, policy illustrations, marketing materials, and other information approved, prepared, and disseminated by Prudential to its nationwide sales force. *See In re Prudential Ins. Co. Of America Sales Practices Litig.*, 962 F.Supp. 450, 474 (D.N.J.1997). The sales force was not permitted to use any marketing material that had not been centrally approved. *Id.* at 473–75, 514. Moreover, the district court found that, because Prudential had given its agents extensive training, the agents' oral sales presentations were uniform. *Id.* at 514–15. Given these findings, the district court certified the class because Prudential had engaged in a "common course of conduct" with materially uniform misrepresentations to the plaintiff class. *Id.* at 511. The Third Circuit approved the certification of the class as within the district court's discretion. *Prudential*, 148 F.3d at 290.

In a subsequent case, the Third Circuit clarified that the *Prudential* holding rested upon the district court's finding of uniformity in the oral sales presentations. *See In re LifeUSA Holding Inc.*, 242 F.3d 136 (3d Cir.2001). The district court in *LifeUSA* had relied on *Prudential* to hold that the defendant's fraudulent scheme provided the basis for each claim and that the predominance requirement had therefore been met. *Id.* at 146. The Third Circuit distinguished *Prudential* on the grounds that *Prudential* involved "uniform, scripted, and standardized" sales presentations that were "virtually identical" in all material respects, while the claims in *LifeUSA* arose from individual misrepresentations, neither uniform nor scripted, made by some 30,000 independent agents to over 280,000 purchasers. *Id.* (emphasis omitted). Given these and

other factual differences, the Third Circuit held that, the predominance requirement had not been met and commonality of claims did not exist. *Id.* at 147.

In *Johnston v. HBO Film Management,* the Third Circuit again addressed this issue in the context of a RICO class action suit. 265 F.3d 178 (3d Cir.2001). The *Johnston* plaintiffs brought a RICO action, alleging that the defendant had induced them to make investments based upon fraudulent uniform oral and written misrepresentations. *Id.* at 186. Examining the record below, the Third Circuit concluded that there was no evidence of uniformity in the sales presentations. *Id.* at 189–90. Finding that two of the four elements necessary to establish the predicate act of securities fraud—misstatements and reliance—were subject to individualized proof, the Third Circuit concluded that the case was not amenable to class certification. *Id.* at 190.

■ We agree with these courts that a common course of conduct is not enough to show predominance, because a common course of conduct is not sufficient to establish liability of the defendant to any particular plaintiff. *See id; LifeUSA Holding,* 242 F.3d at 147; *see also Broussard,* 155 F.3d at 341; *Sprague,* 133 F.3d at 398; *Marcial,* 880 F.2d at 957. In order to establish PaineWebber's liability, each plaintiff must prove that he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss. But a common course of conduct does not demonstrate that any specific statements made pursuant to that scheme were actionable. *See Johnston,* 265 F.3d at 185–86. In contrast, evidence of materially uniform misrepresentations is sufficient to demonstrate the nature of the misrepresentation; an individual plaintiff's receipt of and reliance upon the misrepresentation may then be simpler matters to

determine. *See Prudential,* 148 F.3d at 315.

■ We disagree with these courts, however, insofar as they require specific forms of proof, for example, uniform written scripts for any oral communications and uniform training of sales agents. *See, e.g., In re LifeUSA Holding Inc.,* 242 F.3d at 146–47. While training and the existence of scripts are relevant factors, the inquiry should remain focused on whether material variations in the misrepresentations existed. No particular form of evidentiary proof is mandated. The absence of uniform written sales scripts and training informs the determination whether material variations existed; it does not mandate a particular result. Thus, the fact that sales agents submitted affidavits that they did not participate in training programs or follow scripts, even if uncontroverted, is insufficient to demonstrate by itself that the misrepresentations themselves were not materially uniform.

Even though we believe that material uniformity in the misrepresentations may be established without the use of a standardized sales script, in the present case the district court did not abuse its discretion in denying the motion for class certification. Plaintiffs provided substantial evidence of a centralized sales scheme. For example, PaineWebber prepared marketing materials centrally and trained its brokers to emphasize the Provider's investment features. Several scripts provided evidence that PaineWebber sought to sell the Provider by downplaying the fact that the Provider was, simply, life insurance. But this evidence does not answer the relevant question—whether members of the class received materially uniform misrepresentations. Only if class members received materially uniform misrepresentations can generalized proof be used to establish any element of the fraud. The common scheme presented here does not

demonstrate that the individual misrepresentations made were uniform; therefore, standing alone, the scheme does not provide a sufficient basis to justify class certification.

Despite plaintiffs' contention, therefore, none of this evidence contradicts the district court's sole finding, that Paine-Webber's brokers did not adopt a materially uniform approach in their individual sales presentations. Even the evidence presented by plaintiffs shows that there were, in fact, material variations in the sales pitches used by their brokers. Plaintiffs submitted several customer complaints that describe the various misrepresentations made by PaineWebber's brokers. One customer complaint states that the broker misrepresented the Provider as a retirement program with insurance benefits; another states that the broker represented that the Provider was an IRA; a third specifically states that the broker never mentioned that the Provider was a life insurance product. Similarly, the telephone scripts upon which plaintiffs rely vary significantly. One states that the Provider "features" a life insurance policy; another makes no mention of life insurance at all; a third discloses that the Provider is a life insurance policy. Plaintiffs' evidence demonstrates that PaineWebber's disclosures regarding the Provider's insurance nature varied dramatically. The district court's finding that PaineWebber's brokers did not conduct materially uniform sales presentations was amply supported by the evidence before the court.

## CONCLUSION

For the reasons stated, we affirm the district court's denial of plaintiffs' class certification motion.