USDC SDNY 
 DOCUMENT 
 ELECTRONICALLY FILED 
UNITED STATES DISTRICT COURT DOC 03729724 
SOUTHERN DISTRICT OF NEW YORK DATE FILED: = □ =f 
MICHAEL TECKU, et al. 
 20 Civ. 07327 (VM) 
 Plaintiffs, 
 DECISION AND ORDER 
 —- against - 
YIELDSTREET, INC., et al, 
 Defendants. 

VICTOR MARRERO, United States District Judge. 
 Before the Court are objections filed by Defendants 
YieldStreet, Inc., YieldStreet Management, LLC, YS ALTNOTES 
I, LLC, YS ALTNOTES II, LLC, and Michael Weisz to a Report 
and Recommendation issued by Magistrate Judge Stewart D. 
Aaron, recommending that the Court grant in part and deny in 
part a motion (see Dkt. No. 87 [hereinafter “Motion”]) for 
class certification filed by Plaintiff Lawrence Tjok 
(“T4 ok”) . 
 For the reasons stated below, the Court agrees with the 
Report and Recommendation except to the extent it relies on 
the evidentiary presumption recognized by the United States 
Supreme Court in Affiliated Ute Citizens of Utah v. United 
States, 406 U.S. 128 (1972). Because the conclusions of the 
Report and Recommendation are supported by reasoning 
independent of the Affiliated Ute doctrine, the Court 
otherwise accepts and adopts in full Magistrate Judge Aaron’s 

findings and recommendations concerning class certification. 
The Court therefore GRANTS the Motion in part and DENIES it 
in part. 
 I. BACKGROUND1 
 Plaintiffs Michael Tecku (“Tecku”), David Finkelstein 

(“Finkelstein”), and Lawrence Tjok (“Tjok,” (and together 
with Tecku and Finkelstein, “Plaintiffs”)), brought this 
putative class action against Defendants YieldStreet, Inc., 
YieldStreet Management, LLC, YS ALTNOTES I, LLC, YS ALTNOTES 
II, LLC (together, “YieldStreet”), and Michael Weisz 
(“Weisz,” and together with YieldStreet, “Defendants”). 
Plaintiffs alleged common law fraudulent inducement, aiding 
and abetting fraud, breach of fiduciary duty, aiding and 
abetting breach of fiduciary duty, and negligent 
misrepresentation, as well as violations of the federal 
securities laws. (See Corrected Amended Class Action 
Complaint, Dkt. No. 51 [hereinafter “CAC”].) 

A. THE PARTIES 
 Co-founded by Weisz in or around 2013, YieldStreet is an 
investment company that has offered accredited investors 
“asset-based investment opportunities in idiosyncratic 

1 The Court draws these facts from the evidentiary submissions of the 
parties, as set forth below in Section III. Where necessary to explain 
background context of this dispute, the Court also draws from the 
Corrected Amended Class Action Complaint. (See Dkt. No. 51.) 
markets not typically available to the investing public at 
large, such as fine arts, commercial real estate, or vessel 
deconstruction.” (CAC ¶¶ 1, 36-37.) YieldStreet provides a 
“one-stop shop” online investment portal through which 
investors can self-accredit, browse investment opportunities, 

and make investments. (Id. ¶ 2.) 
 Plaintiffs are individual investors who bought 
YieldStreet’s offerings. (See Id. ¶¶ 142-147.) Plaintiffs’ 
claims arise out of their purchases of borrower payment 
dependent notes (“BPDNs”) from YieldStreet investment funds. 
BPDNs are “debt obligations tied to the performance of an 
underlying loan made by a special purpose vehicle.” (Id. 
¶¶ 3, 42.) In effect, YieldStreet raises capital for its 
investment funds by issuing BPDNs to investors; YieldStreet 
uses the capital raised from BPDN sales to issue asset-based 
loans to third-party businesses. (see id. ¶ 3; see also 
Centner Ex. 1 at 1; Centner Ex. 2 at 1.)2 Then, YieldStreet 

uses the proceeds of those loans to pay returns to the BPDN 
investors. (See CAC ¶ 3; see also Centner Ex. 1 at 1; Centner 
Ex. 2 at 1.) 

2 Tjok’s attorney, Daniel Centner, submitted a declaration in support of 
Tjok’s Motion. (See Dkt. No. 89 [hereinafter “Centner Declaration”].) The 
Court refers to the numbered exhibits attached to the Centner Declaration 
as “Centner Ex. __.” 
 YieldStreet makes its investment offerings as separate 
investments funds. The five funds at issue in this action are 
called Vessel Deconstruction I, Vessel Deconstruction Fund 
III, Vessel Deconstruction Fund IV, Vessel Deconstruction 
Fund VI, and Louisiana Oil & Gas. (See CAC ¶¶ 3, 142-147.) 
B. ALLEGED MISREPRESENTATIONS AND OMISSIONS 

 Plaintiffs allege that YieldStreet was not always 
transparent in communications with investors. Investors 
received information from YieldStreet in the form of private 
placement memoranda (“PPMs”) and Series Note Supplements 
(“SNSs”). (See CAC ¶¶ 51, 52, 57; see also Centner Ex. 9; 
Centner Ex. 10.) Investors who ultimately purchased BPDNs 
executed subscription agreements, confirming that they had 
read and relied on the PPMs and the SNSs in deciding to make 
a BPDN investment. (Centner Ex. 6 at ¶ 2(a); Centner Ex. 7 at 
¶ 2(a); Centner Ex. 8 at ¶ 2(a)) 
 This case primarily concerns YieldStreet’s alleged 

misrepresentations and omissions concerning its vessel 
deconstruction funds.3 YieldStreet’s vessel deconstruction 
funds raised capital from investors like Plaintiffs to extend 
loans to borrowers in the business of “extract[ing] raw 
materials for resale from non-operational vessels.” (Centner 

3 Plaintiffs have alleged substantially identical misrepresentations and 
omissions with respect to one YieldStreet Louisiana Oil & Gas Offering. 
(See, e.g., Centner Ex. 6.) 
Ex. 9 at 3; Centner Ex. 10 at 3; see also CAC ¶ 69.) The 
borrowers used the principal of such loans to “facilitate[] 
vessels’ purchase, transportation and sale to a shipbreaker,” 
with the loans secured by the vessels, which were destined 
for scrap. (Centner Ex. 9 at 3; Centner Ex. 10 at 3.) 

 Plaintiffs allege several distinct types of 
misrepresentations and omissions relating to the vessel 
deconstruction funds. First, the PPMs touted YieldStreet’s 
use of “asset class” experts to source and structure the 
underlying loans, including by stating that YieldStreet 
“works with and relies on experienced Originators” (Centner 
Ex. 1 at 27; Centner Ex. 2 at 27) to identify suitable 
borrowers based on “the Originator’s expertise in the sector 
or asset class area” (Centner Ex. 1 at 28; Centner Ex. 2 at 
28). Plaintiffs allege — and have now substantiated their 
allegations in discovery — that YieldStreet acted contrary to 
the advice of its own asset class expert in vessel 

deconstruction. (See, e.g., Centner Ex. 13; Centner Ex. 14; 
Centner Ex. 17.)4 
 Next, Plaintiffs allege that the PPMs and SNSs described 
the diligence process by which YieldStreet extended asset- 

4 The deposition testimony of a representative of Defendants’ vessel-
deconstruction expert, Four Wood Capital (d/b/a Global Marine Transport 
Capital), identifies specific loan terms and operational hazards that 
rendered Defendants’ loans unacceptably risky in the expert’s view, 
based loans to borrowers, again touting reliance on expert 
advice in each niche lending market. (Centner Ex. 9 at 6-7; 
Centner Ex. 10 at 6-7.) YieldStreet stated that it would 
convene a credit committee to discuss the findings and 
recommendations of the expert, with the expert’s 

“underwriting process [serving as] the framework under which 
all transactions are reviewed . . . .” (Centner Ex. 9 at 6- 
7; Centner Ex. 10 at 6-7.) The diligence process also included 
general investor safeguards like lien priority, requirements 
for adequate collateralization, and insurance for the loans 
extended by YieldStreet. (See Centner Ex. 1 at 28; Centner 
Ex. 2 at 28; Centner Ex. 10 at 1.) Again, Plaintiffs have 
alleged and now substantiated that — rather than employ the 
expert’s standards as the framework for credit decisions — 
YieldStreet’s lending decisions were driven by its ability to 
sell corresponding BPDNs to investors and by any fee-based 
remuneration that YieldStreet would generate therefrom. (See, 

e.g., Centner Ex. 13; Centner Ex. 19; Centner Ex. 21.) 
Moreover, the credit committee consisted only of 
YieldStreet’s two co-founders; other YieldStreet employees 

including an unconventionally short loan term for the industry, the risk 
of fraudulent borrowers, and an industry hazard that vessels could be 
broken down and sold for scrap without regard to valid liens on the 
vessel. (See, e.g., Centner Ex. 13.) Those concerns, according to the 
Four Wood Capital representative’s testimony, were communicated to 
Defendants and largely disregarded. (See id.) 
and expert consultants knowledgeable about the risks of 
vessel deconstruction loans were not permitted to vote at 
credit committee meetings, limiting the credit committee’s 
ability to screen loans for an appropriate level of risk. 
(See Centner Ex. 13; Centner Ex. 15; see also Centner Ex. 

16.) 
 Finally, Plaintiffs allege that the PPMs misrepresented 
that YieldStreet’s offerings had “suffered no principal 
loss.” (Centner Ex. 1 at 40; Centner Ex. 2 at 40.) Plaintiffs 
have now identified YieldStreet offerings that had, indeed, 
lost principal at the time YieldStreet distributed the PPMs. 
(See Centner Ex. 27.) In addition, Plaintiffs identified at 
least one instance in which YieldStreet’s auditors predicted 
that YieldStreet would recover $0 from a borrower in default, 
making principal loss near certain. (See Centner Ex. 26 at 
4.) Despite these circumstances, YieldStreet consistently 
maintained to investors that it had never lost principal on 

any of its investment opportunities, which Plaintiffs contend 
was demonstrably untrue. 
C. PROCEDURAL HISTORY 
 Plaintiffs filed the operative complaint on March 31, 
2022. (See CAC.) The CAC has seven causes of action: 
fraudulent inducement (Count I); aiding and abetting fraud 
(Count II); violation of Section 10(b) of the 1934 Securities 
and Exchange Act (the “Exchange Act”) and Rule 10b-5 (Count 
III); violation of Section 20(a) of the Exchange Act against 
Weisz only (Count IV); breach of fiduciary duty against 
YieldStreet, Inc. and YieldStreet Management, LLC only (Count 
V); aiding and abetting breach of fiduciary duty against Weisz 

only (Count VI); and negligent misrepresentation against all 
Defendants except Weisz (Count VII). The Court denied 
Defendants’ motion to dismiss the CAC (see Dkt. No. 52), and 
Defendants thereafter answered the CAC (see Dkt. No. 59). The 
parties have since been in discovery. (See Dkt. No. 65.) 
 In May 2022, Tecku, Finkelstein, and Tjok filed a motion 
to be appointed lead plaintiffs in this action and to approve 
their choice of lead counsel for a putative class. (See Dkt. 
No. 55.) The Court denied the motion to appoint Tecku and 
Finkelstein lead plaintiffs, but otherwise granted the motion 
to appoint Tjok lead plaintiff and to appoint Tjok’s choice 
of counsel as class counsel. (See Dkt. No. 67.) 

 In February 2023, Tjok filed the motion now pending 
before the Court, seeking class certification and appointment 
as class representative pursuant to Federal Rule of Civil 
Procedure 23 (“Rule 23”). (See Motion at 1.) Tjok sought 
certification and appointment as class representative for the 
following class: 
 All persons who purchased a Borrower Payment 
 Dependent Note (BPDN) issued by YS ALTNOTES I or YS 
 ALTNOTES II in connection with the following 
 offerings: 

 1. Vessel Deconstruction I; 
 2. Vessel Deconstruction Fund III; 
 3. Vessel Deconstruction Fund IV; 
 4. Vessel Deconstruction Fund VI; and 
 5. Louisiana Oil & Gas. 

 Excluded from the Class are Defendants, any 
 entities in which Defendants have a controlling 
 interest, Defendants’ agents and employees, and any 
 judge to whom this action is assigned and any member 
 of such judge’s staff and immediate family. 
(Id.) 
 Tjok filed a memorandum of law (see Dkt. No. 88 
[hereinafter “Memorandum” or “Mem.”]),5 and Tjok’s attorney 
filed a declaration with thirty-three attached exhibits (see 
Centner Decl.)6 in support of the Motion. In opposition, 
Defendants filed a memorandum of law (see Dkt. No. 97 
[hereinafter “Opposition” or “Opp.”]), and Defendants’ 
attorney filed a declaration with seventeen attached exhibits 
(see Dkt. No. 98 [hereinafter “Tiefenbrun Decl.”]). Tjok then 
filed a memorandum of law in reply. (See Dkt. No. 99 

5 The Memorandum is sealed. A public version of the Memorandum with 
redactions is available at Dkt. No. 91. 
6 The Centner Declaration is sealed. A public version of the Centner 
Declaration with redactions, along with any unsealed exhibits attached 
thereto, are available at Dkt. No. 90. 
[hereinafter “Reply”].) This Court referred the Motion to 
Magistrate Judge Aaron for a Report and Recommendation. (See 
Dkt. No. 101.) 
 Magistrate Judge Aaron recommended that the Court grant 
in part and deny in part Tjok’s Motion. (See Report and 

Recommendation, Dkt. No. 109 [hereinafter “R&R”] at 27.) 
Specifically, Magistrate Judge Aaron recommended that the 
Court certify the following class (the “Proposed Class”), 
with respect to Count I, Count II, Count III, Count IV, and 
Count VII of the CAC: 
 All persons who purchased a Borrower Payment 
 Dependent Note (BPDN) issued by YS ALTNOTES I in 
 connection with the following offerings: (1) Vessel 
 Deconstruction Fund I; (2) Vessel Deconstruction 
 Fund III; and (3) Louisiana Oil & Gas Fund, 
 excluding Defendants, any entities in which 
 Defendants have a controlling interest, Defendants’ 
 agents and employees, and any judge to whom this 
 action is assigned and any member of such judge’s 
 staff and immediate family. 
(R&R at 27.) 
 Magistrate Judge Aaron recommended against certification 
with respect to two of the funds at issue (Vessel 
Deconstruction Fund IV and Vessel Deconstruction Fund VI) for 
lack of standing. (See R&R at 13-15.) Magistrate Judge Aaron 
also recommended against certification of any class with 
respect to the fiduciary duty claims (Count V and Count VI), 
on the basis that common questions of fact or law would not 
predominate over individual questions of fact or law raised 
by those claims pursuant to Rule 23(b)(3). (See R&R at 26.)7 
 Defendants filed timely objections to the R&R, arguing 
that Magistrate Judge Aaron erred in certifying any class at 
all. (See Dkt. No. 110 [hereinafter “Objections” or 

“Objns.”].) Tjok thereafter responded to the Objections. (See 
Dkt. No. 111 [hereinafter “Response” or “Resp.”].) 
 II. STANDARD OF REVIEW 
 Under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil 
Procedure 72(b), the Court may designate a magistrate judge 
to submit proposed findings of fact and recommendations for 
the disposition of certain motions, including a motion to 
maintain a class action. 
 A party may object in writing to the magistrate judge’s 
recommendations, and the Court “shall make a de novo 
determination of those portions of the report or specified 
proposed findings or recommendations to which objection is 

made.” 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). 

7 Also before Magistrate Judge Aaron was a motion to strike a declaration, 
with three attached exhibits, that Tjok’s attorney filed 
contemporaneously with Tjok’s Reply. (See Dkt. Nos. 100 (declaration), 
102 (motion to strike).) The parties fully briefed the motion to strike. 
(See Dkt. Nos. 103–105). In the R&R, Magistrate Judge Aaron acknowledged 
that the declaration submitted on reply was improper rebuttal material 
and ought not be considered in deciding Tjok’s motion, but the R&R 
nevertheless recommended that the Court deny the motion to strike the 
declaration from the record entirely. (See R&R at 26-27.) No party 
objected to the R&R’s findings and recommendation on the motion to strike, 
so the Court accepts and adopts the R&R in this regard. Accordingly, the 
Court neither considers nor strikes Tjok’s improper rebuttal material. 
“However, when the objections simply reiterate previous 
arguments or make only conclusory statements, the Court 
should review the report for clear error.” Brown v. Colvin, 
73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014). “[A]n error is clear 
when the reviewing court is left with a definite and firm 

conviction that a mistake has been committed.” Levinson v. 
U.S. Fed. Bureau of Prisons, 594 F. Supp. 3d 559, 563 
(S.D.N.Y. 2022) (quotation marks omitted). 
 Defendants make three discrete objections. The Court 
finds that the first objection — that no class can be 
certified with respect to the negligent misrepresentation 
claims for the same reasons that no class can be certified 
with respect to the fiduciary duty claims — is subject to 
clear error review because it simply rehashes arguments made 
before Magistrate Judge Aaron. (See Objns. at 5-6; cf. Opp. 
at 10-11.) The remaining objections are sufficiently specific 
to warrant de novo review. 

 The Court does not review the findings and 
recommendations of the R&R, to which no party has made an 
objection, and accordingly accepts and adopts those 
recommendations in full. See Thomas v. Arn, 474 U.S. 140, 149 
(1985); Gosain v. Texplas India Priv. Ltd., 393 F. Supp. 3d 
368, 372 (S.D.N.Y. 2019). 
 III. LEGAL STANDARD UNDER RULE 23 
 “Class actions under Rule 23 of the Federal Rules of 
Civil Procedure are an exception to the general rule that one 

person cannot litigate injuries on behalf of another.” Langan 
v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d 88, 93 (2d 
Cir. 2018) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 
338, 348 (2011)). “Through Rule 23, Congress has authorized 
plaintiffs to bring, under limited circumstances, a suit in 
federal court on behalf of, not just themselves, but others 
who were similarly injured.” Id. 
 Under Rule 23, a District Court must determine “[a]t an 
early practicable time” after initiation of suit “whether to 
certify the action as a class action,” whereby the Court “must 
define the class and the class claims, issues, or defenses, 
and must appoint class counsel.” Rule 23(c)(1)(A)-(B). 

Certification formally allows the named plaintiffs in a class 
action to proceed as representatives of absent class members, 
and therefore “certification of a suit as a class action has 
important consequences for the unnamed members of the class,” 
as well as for the defendants who may be liable to named and 
unnamed members of the class. United States v. Sanchez-Gomez, 
584 U.S. 381, 387 (2018); see Langan, 897 F.3d at 93-94. 
 “Rule 23 does not set forth a mere pleading standard.” 
Wal-Mart, 564 U.S. at 350. Class certification is appropriate 
where the Proposed Class meets, by a preponderance of the 

evidence following “rigorous analysis,” the requirements of 
Rule 23(a) and the requirements of one of the three types of 
classes enumerated in Rule 23(b). Id. at 350-51; see also In 
re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 
(2d Cir. 2009) (standard of proof applicable to evidence 
proffered to meet requirements of Rule 23 is preponderance of 
the evidence). 
 The District Court must “make a definitive assessment of 
Rule 23 requirements, notwithstanding their overlap with 
merits issues, must resolve material factual disputes 
relevant to each Rule 23 requirement, and must find that each 
requirement is established by at least a preponderance of the 

evidence.” In re U.S. Foodservice Inc. Pricing Litig., 729 
F.3d 108, 117 (2d Cir. 2013) (quotation marks and alterations 
omitted). Stated differently, the Court must “receive enough 
evidence, by affidavits, documents, or testimony, to be 
satisfied that each Rule 23 requirement has been met.” 
Teamsters Local 445 Freight Div. Pension Fund v. Bombardier 
Inc., 546 F.3d 196, 204 (2d Cir. 2008). 
 The four requirements of Rule 23(a) are that “(1) the 
class is so numerous that joinder of all members is 
impracticable; (2) there are questions of law or fact common 

to the class; (3) the claims or defenses of the representative 
parties are typical of the claims or defenses of the class; 
and (4) the representative parties will fairly and adequately 
protect the interests of the class.” Rule 23(a). Of the three 
types of class actions contemplated by Rule 23(b), the only 
one relevant here is defined in Rule 23(b)(3), which provides 
for class certification where “the court finds that the 
questions of law or fact common to class members predominate 
over any questions affecting only individual members, and 
that a class action is superior to other available methods 
for fairly and efficiently adjudicating the controversy.” 
Rule 23(b)(3). 

 IV. DISCUSSION 
 Defendants’ Objections challenge the R&R’s conclusions 
with respect to Rule 23(b)(3), contending that the R&R erred 
in its conclusion that “the questions of law or fact common 
to class members predominate over any questions affecting 
only individual members” of the Proposed Class. Rule 
23(b)(3). (See also Objns.) This aspect of Rule 23 has come 
to be known as the “predominance” requirement. 
 Predominance “tests whether Proposed Classes are 
sufficiently cohesive to warrant adjudication by 
representation.” Myers v. Hertz Corp., 624 F.3d 537, 547 (2d 

Cir. 2010). The predominance requirement is satisfied “if 
resolution of some of the legal or factual questions that 
qualify each class member’s case as a genuine controversy can 
be achieved through generalized proof, and if these 
particular issues are more substantial than the issues 
subject only to individualized proof.” Id. “Considering 
whether questions of law or fact common to class members 
predominate begins, of course, with the elements of the 
underlying cause of action.” Erica P. John Fund, Inc. v. 
Halliburton Co., 563 U.S. 804, 809 (2011) (quotation marks 
omitted) 
 With these principles in mind, the Court now addresses 

each of Defendants’ Objections. 
A. OBJECTION I: NEGLIGENT MISREPRESENTATION CLAIMS 
 Defendants first object that the R&R erred in 
recommending class certification as to Count VII for 
negligent misrepresentation. (See Objns. at 5-6.) Defendants 
believe that the negligent misrepresentation claims, like the 
fiduciary duty claims, “require plaintiffs to establish that 
they were owed a ‘duty’ by Defendants and determining whether 
such a relationship existed necessarily requires 
individualized, personalized inquiries that predominate over 
any common issues.” (Id. at 5; see also R&R at 26.) As noted 
above, the Court reviews Magistrate Judge Aaron’s 

recommendation in this respect for clear error and finds no 
clear error in the R&R. 
 For background, the R&R recommends that no class can be 
certified with respect to Plaintiffs’ fiduciary duty claims 
because those claims would require individualized proof that 
YieldStreet “provide[d] personalized advice attuned to a 
client’s concerns, whether by written or verbal 
communication” and because “[t]he issues regarding whether a 
fiduciary duty exists for each investor requires an 
individualized, personalized inquiry for each investor.” (See 
R&R at 26.) Therefore, questions of fact common to the class 
would not predominate over individual questions of fact. (See 

id.) No party challenges this conclusion. 
 Defendants argue that the claims for negligent 
misrepresentation, too, require a plaintiff to show the 
existence of a fiduciary duty, citing the Second Circuit 
decision in Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 
1992). (See Objns. at 6 (citing Stewart, 976 F.2d at 90 
(“[U]nder New York law, a plaintiff may recover for negligent 
misrepresentation only where the defendant owes her a 
fiduciary duty.”)); see also Opp. at 11.) 
 However, four years after the Second Circuit’s holding 
in Stewart, the New York Court of Appeals clarified in Kimmell 
v. Schaefer that a plaintiff in a negligent misrepresentation 

action need only allege the defendant’s “duty to speak with 
care,” without mentioning the necessity of a fiduciary 
relationship. 675 N.E.2d 450, 454 (N.Y. 1996). In fact, 
Kimmell involved circumstances similar to those alleged here. 
In that case, a company officer had a duty to speak with care 
when making “deliberate representation[s]” about the company 
to potential investors, thus inducing the investors to forego 
independent due diligence efforts. 675 N.E.2d at 454-55. 
 Federal courts in New York have since acknowledged the 
shift in the law that Kimmell represents, holding that 
“deliberate representation[s]” between commercial 
transactors can give rise to a duty to speak with care in 

some circumstances. Suez Equity Inv’rs, L.P. v. Toronto- 
Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001); see also 
Century Pac., Inc. v. Hilton Hotels Corp., No. 03 Civ. 8258, 
2004 WL 868211, at *8 (S.D.N.Y. Apr. 21, 2004) (“Courts have 
found a special relationship and duty, for example, where 
defendants sought to induce plaintiffs into a business 
transaction by making certain statements or providing 
specific information with the intent that plaintiffs rely on 
those statements or information.”). 
 Here, the misrepresentations in the PPMs and SNSs are 
sufficiently deliberate to give rise to a duty to speak with 
care. (See Centner Ex. 1; Centner Ex. 2; Centner Ex. 9, 

Centner Ex. 10.). The existence of that duty — as to every 
member of the Proposed Class — can be established through 
generalized proof, given that the PPMs and SNSs were 
distributed to all investors. (See Centner Ex. 6, Centner 
Ex. 7, Centner Ex. 8.) Accordingly, notwithstanding the R&R’s 
conclusion as to the fiduciary duty claims, there is no clear 
error in Magistrate Judge Aaron’s finding that the negligent 
misrepresentation claims here are susceptible to proof of 
common questions of fact, which predominate over individual 
issues. 
B. OBJECTION II: COMMON LAW CLAIMS 
 Defendants next object that the R&R erred in 

recommending class certification with respect to the common 
law claims: fraudulent inducement (Count I), aiding and 
abetting fraud (Count II), and negligent misrepresentation 
(Count VII). (See Objns. at 7-8.) Defendants correctly 
identify that Tjok must show that Proposed Class members 
reasonably relied on Defendants’ misrepresentations or 
omissions, and that such reliance can be established with 
generalized proof. (See R&R at 23 nn. 9, 10 (listing elements 
of the respective claims).) Defendants further contend that 
the R&R erroneously relied on the Affiliated Ute doctrine — 
which establishes a rebuttable presumption of reliance where 
the alleged fraud consists primarily of omissions rather than 

misstatements — in recommending certification of the Proposed 
Class’s common law claims. See Affiliated Ute Citizens of 
Utah v. United States, 406 U.S. 128, 153 (1972). (See also 
R&R at 24-26; Objns. at 7-8.) 
 As noted above, the Court reviews the R&R de novo with 
respect to this objection. The Court notes at the outset that, 
contrary to Defendants’ characterization (Objns. at 7), the 
R&R is not fairly read to recommend application of the 
Affiliated Ute presumption to Plaintiffs’ common law claims. 
Rather, Magistrate Judge Aaron recommended that the class be 
certified with respect to all claims (except the fiduciary 
duty claims) because those claims could be proven largely 

with generalized evidence, thus establishing predominance of 
common issues over potential individual issues. (See R&R at 
24-26.) Affiliated Ute provided further support only for 
class certification of the claims brought under the federal 
securities laws. (See R&R at 25.) 
 Magistrate Judge Aaron’s findings are supported without 
application of Affiliated Ute. To meet their burdens on the 
element of reliance, members of the Proposed Class need only 
show that the alleged misrepresentations or omissions “were 
a ‘substantial factor’ in each investor’s decision” to 
purchase BPDNs. Abu Dhabi Com. Bank v. Morgan Stanley & Co., 
Inc., 269 F.R.D. 252, 261 (S.D.N.Y. 2010) (quoting Curiale v. 

Peat, Marwick, Mitchell & Co., 630 N.Y.S.2d 996, 1002 (1st 
Dep’t 1995)); see Ge Dandong v. Pinnacle Performance, Ltd., 
No. 10 Civ. 8086, 2013 WL 5658790, at *11 (S.D.N.Y. Oct. 17, 
2013) (“Plaintiff must demonstrate that the misrepresentation 
or omission was a substantial factor in inducing him or her 
to act the way that he or she did.” (cleaned up)). At this 
stage, Tjok’s burden is to show that reliance can be 
established by generalized proof, and that common issues 
predominate over individual issues. See Rule 23(b)(3). 
 The Court finds that the necessary showing of reliance 
for the Proposed Class can be made through generalized proof. 
The law is clear that common law fraud claims are not beyond 

the reach of Rule 23, even though they require proof of each 
class member’s reliance. “Fraud claims based on uniform 
misrepresentations made to all members of the class” are 
“appropriate subjects for class certification because the 
standardized misrepresentations may be established by 
generalized proof.” Moore v. PaineWebber, Inc., 306 F.3d 
1247, 1253 (2d Cir. 2002). Especially “in the context of a 
financial transaction — which does not usually implicate the 
same type or degree of personal idiosyncratic choice as does 
a consumer purchase — payment alone may constitute 
circumstantial proof of reliance upon a financial 
representation.” Ge Dandong, 2013 WL 5658790, at *9; see also 

In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 
119-120 (2d Cir. 2013); Anwar v. Fairfield Greenwich Ltd., 
306 F.R.D. 117, 144 (S.D.N.Y. 2013). 
 For reasons stated in Moore, 306 F.3d at 1253, U.S. 
Foodservice, 729 F.3d at 120, and Ge Dandong, 2013 WL 5658790, 
at *9, the Proposed Class’s common law claims here are 
appropriate subjects for class certification. The actionable 
misstatements at the heart of the Proposed Class members’ 
claims are all found in a handful of written offering 
documents: the PPMs (see, e.g., Centner Ex. 1; Centner Ex. 2) 
and the SNSs (see, e.g., Centner Ex. 9; Centner Ex. 10). The 
subscription agreements defining the relationship between 

YieldStreet and its investors further warrants that the 
investors read and relied upon the PPMs and the SNSs and 
expressly disclaims reliance on verbal representations that 
YieldStreet’s employees may have made. (See Centner Ex. 6; 
Centner Ex. 7; Centner Ex. 8; see also Opp. at 12 n.9.) This 
is not the type of case where misstatements and omissions 
were made in personal, unscripted conversations likely to 
vary from investor to investor; the misrepresentations and 
omissions were written, and they were uniform, meriting class 
treatment. See Moore, 306 F.3d at 1255 (looking to sales 
scripts as probative of uniformity of statements to 
investors); Abu Dhabi, 269 F.R.D. at 263 (denying class 

certification where communications to investors “varied”). 
Proposed Class members’ reasonable reliance can therefore be 
shown through common evidence, simply by the fact that they 
received the PPMs and SNSs and purchased the related BPDNs. 
 Having concluded that reliance is susceptible to 
generalized proof in this case, the Court next must determine 
whether common issues in the reliance analysis predominate 
over the individual ones. See Rule 23(b)(3). The Court finds 
they do. 
 Defendants insist in their Opposition and their 
Objections that reliance is, necessarily, a “hopelessly 
individualized” inquiry. (Opp. at 12; see Objns. at 7-8.) 

They argue that they can successfully rebut common evidence 
of reasonable reliance through individualized evidence of 
each investor’s investment philosophy, risk tolerance, 
reaction to Defendants’ statements, one-on-one communications 
with YieldStreet, and independent diligence efforts. (See 
Opp. at 11-20 (collecting evidentiary citations).) 
 By and large, the evidence cited by Defendants is beside 
the point. Defendants’ evidence does not show that Proposed 
Class members did not, in fact, rely on the PPMs or SNSs or 

somehow acted unreasonably in doing so. That Proposed Class 
members may have had additional, individual reasons to invest 
in BPDNs does not disprove that the Proposed Class members 
did rely on the misrepresentations in the PPMs and SNSs. See 
Ge Dandong, 2013 WL 5658790, at *11 (“At most, the 
conversations Defendants point to demonstrate that some 
putative class members had more than one reason for purchasing 
the Notes; they do not, however, contradict the notion that 
Proposed Class members relied on Defendants' alleged 
misrepresentations and omissions as well.”).8 After all, the 
Proposed Class need only show that Defendants’ 
misrepresentations and omissions were just one “substantial 

factor” in inducing the Proposed Class members’ BPDN 
purchases. Ge Dandong, 2013 WL 5658790, at *11; see also 

8 See also Seekamp v. It’s Huge, Inc., Case 09 Civ. 0018, 2012 WL 860364, 
at *10 (N.D.N.Y. Mar. 13, 2012) (finding predominance of common issues 
even though “each proposed class member may have opted to purchase the 
[product] for different reasons”); Spencer v. Hartford Fin. Servs. Grp., 
Inc., 256 F.R.D. 284, 303 (D. Conn. 2009) (same, where “each plaintiff 
may have accepted his or her [allegedly fraudulent] settlement for 
somewhat different reasons”). 
Curiale, 630 N.Y.S.2d at 996. They can do so through 
generalized proof. 
 Indeed, the Court can conclude that investors relied on 
the misrepresentations and omissions simply because of the 
nature of the misrepresentations and omissions themselves, 

which were “so fundamental to the value” of the BPDNs that 
many investors might find it inconceivable that they may have 
been untrue. Ge Dandong, 2013 WL 5658790, at *9; see also 
U.S. Foodservice, 729 F.3d at 120-21. Defendants put forth no 
evidence to suggest that investors knew (or should have known) 
that YieldStreet made unacceptably risky loans contrary to 
their own expert consultants’ advice. Similarly, Defendants 
set forth no evidence to suggest that investors knew (or 
should have known) that the YieldStreet credit committee 
would make lending decisions for reasons other than the 
committee’s expert-backed assessment of risk and likely 
return to investors. In these circumstances, the fact that 

Proposed Class members went through with their investments is 
indicative that those Proposed Class Members believed the 
representations in the PPMs and SNSs to be true. U.S. 
Foodservice, 729 F.3d at 120. 
 Even the cases cited by Defendants underscore the 
propriety of class certification under these circumstances. 
See In re Initial Pub. Offerings Secs. Litig. [hereinafter 
“IPO”], 471 F.3d 24 (2d Cir. 2006); N.J. Carpenters Health 
Fund v. Residential Cap., LLC, 272 F.R.D. 160 (S.D.N.Y. 2011); 
Abu Dhabi, 269 F.R.D. at 261. In IPO, N.J. Carpenters, and 
Abu Dhabi, individual issues of reliance predominated over 
common issues; however, in each case, the plaintiffs knew (or 

should have known) the falsity of the alleged 
misrepresentations underlying their fraud allegations, unlike 
the instant case. See 471 F.3d at 42-43; 272 F.R.D. at 169; 
269 F.R.D. at 263. In IPO, the defendants’ scheme was public 
knowledge, and any person could have discovered the nature of 
the scheme simply through diligent research. See 471 F.3d at 
43. Whether reliance was reasonable therefore depended on the 
diligence of each plaintiff’s research efforts. See id. In 
N.J. Carpenters and Abu Dhabi, the plaintiffs included 
sophisticated institutional investors with the right to 
conduct thorough diligence on the investments at issue. See 
272 F.R.D. at 169; 269 F.R.D. at 263. In those cases, the 

courts held that the factual details of the plaintiffs’ 
individual due diligence processes, as relevant to reasonable 
reliance, would predominate over common issues. See 272 
F.R.D. at 169; 269 F.R.D. at 263. 
 No such circumstances are present here. Unlike IPO, 
there is no suggestion that the nature of YieldStreet’s 
lending practices were publicly known when Proposed Class 
members made their investments. See 471 F.3d at 43. And unlike 
the plaintiffs in N.J. Carpenters and Abu Dhabi, Plaintiffs 
were not institutional investors but rather individual 
investors buying securities in a retail market. See 272 F.R.D. 
at 169; 269 F.R.D. at 263. Plaintiffs had no window into 

Defendants’ credit committee operations until discovery in 
this action, forestalling a meaningful opportunity to perform 
independent diligence on whether Defendants’ representations 
about YieldStreet’s own operations were true.9 Defendants’ 
evidence does not show that ordinary individual diligence 
efforts could have revealed the allegedly untruthful nature 
of Defendants’ representations in the PPMs and SNSs. 
 Accordingly, the common issues with respect to 
reasonable reliance, as related to the Proposed Class’s 

9 Defendants, apparently making the argument that Plaintiffs should have 
investigated YieldStreet’s operations before investing, emphasize that 
“every [YieldStreet] investor is a sophisticated, high-net-worth 
accredited investor” because YieldStreet offered securities only to 
accredited investors under SEC Regulation D. (Opp. at 13 & n.10) Even if 
Regulation D in some circumstances exempts securities issuers from 
registering with the SEC offerings made to accredited investors, see 17 
C.F.R. § 230.506(c), it does not necessarily follow that those investors 
the same capabilities as the institutional investors had in N.J. 
Carpenters or Abu Dhabi to conduct meaningful due diligence. See 272 
F.R.D. at 169; 269 F.R.D. at 263. Nor does it follow that all accredited 
investors under Regulation D are experienced investors or high-net-worth 
individuals by today’s standards. Indeed, some have observed that the 
definition of “accredited investor” today includes many inexperienced 
investors because “the wealth criteria for individual investors have not 
been adjusted since 1982.” Jennifer Johnson, Private Placements: A 
Regulatory Black Hole, 35 Del. J. of Corp. Law 151, 191 & n.242 (2010); 
see also Donald C. Langevoort, The SEC, Retail Investors, and the 
Institutionalization of the Securities Markets, 95 Va. L. Rev. 1025, 1058 
(2009) (similar). The Proposed Class does not forfeit its ability to 
recover for fraud simply because they were all accredited investors. 
common-law claims, predominate over any individual issues. 
The Court is persuaded by a preponderance of the evidence 
that Defendants’ misrepresentations and omissions were at 
least one substantial factor causing Plaintiffs’ investments, 
and that this notion can be shown by generalized proof. 
C. OBJECTION III: FEDERAL SECURITIES CLAIMS 

 Defendants’ final objection to the R&R contends that it 
was error to apply the Affiliated Ute presumption of reliance 
to the claims brought under the federal securities laws 
(Counts III and IV) – which, like the common law claims, 
require a showing of the Proposed Class’s reasonable reliance 
on YieldStreet’s alleged misrepresentations or omissions. 
(See Objns. at 8-10.) More specifically, Defendants argue 
that the Affiliated Ute presumption applies only to claims 
involving omissions, not misrepresentations, and that 
Affiliated Ute is therefore not applicable to this action, in 
which the allegations focus largely on purported 

misrepresentations. Defendants also argue that, even if the 
Court finds that Affiliated Ute applies in the first instance, 
Defendants have rebutted the presumption with a sufficient 
evidentiary showing. As indicated above, the Court reviews 
the R&R in this respect de novo. 
 As briefly noted above, the Affiliated Ute presumption 
“allows the element of reliance to be presumed in cases 
involving primarily omissions, rather than affirmative 
misstatements.” Waggoner v. Barclays PLC, 875 F.3d 79, 93 (2d 
Cir. 2017); see also Affiliated Ute, 406 U.S. at 153. “The 
Affiliated Ute presumption does not apply to earlier 
misrepresentations made more misleading by subsequent 

omissions, or to what has been described as ‘half–truths,’ 
nor does it apply to misstatements whose only omission is the 
truth that the statement misrepresents.” Waggoner, 875 F.3d 
at 96; see also Baliga v. Link Motion, Inc., No. 18 Civ. 
11642, 2022 WL 16707361, at *11 (S.D.N.Y. Nov. 4, 2022). Cases 
involving primarily omissions receive special treatment under 
Affiliated Ute because it can be functionally impossible for 
a plaintiff to prove reasonable reliance on a defendant’s 
silence; the same, however, is not true where a defendant 
made affirmative misrepresentations to the plaintiff. See 
Affiliated Ute, 406 U.S. at 153; Waggoner, 875 F.3d at 93, 
96. 

 The Court finds that this case is primarily about 
misrepresentations, not omissions, and Affiliated Ute 
therefore does not apply. The PPMs and SNSs described 
processes to protect Plaintiffs’ investments, but Defendants 
are alleged to have omitted mentioning that they ignored those 
processes. (See Centner Ex. 1; Centner Ex. 2; Centner Ex. 9; 
Centner Ex. 10.) The statements alleged to be omitted — that 
is, that Defendants did not follow the advice of the asset- 
class expert and that Defendants accepted unreasonable risk 
despite the presence of a “credit committee” to police that 
risk — are simply the inverse of Defendants’ 
misrepresentations on the same topics. See Waggoner, 875 F.3d 

at 96. Accordingly, Affiliated Ute does not apply, and the 
Court need not determine whether Defendants have rebutted the 
Affiliated Ute presumption with competent evidence. 
 Regardless of the applicability of Affiliated Ute, 
however, class treatment is still appropriate for the claims 
brought under the federal securities laws. As the Court has 
already found with respect to the Proposed Class’s common law 
claims (see supra § IV(B)), reasonable reliance on 
Defendants’ misrepresentations in this action can be 
established through common proof. See Moore, 306 F.3d at 1253; 
U.S. Foodservice, 729 F.3d at 120. This Court’s analysis with 
respect those common law fraud claims applies with equal force 

to Plaintiffs’ federal securities fraud claims, given that 
reasonable reliance is an element of all of those claims. 
Moreover, because the issues of fact relevant to each Proposed 
Class member’s investment decisions do not disprove the class 
members’ reliance on the PPMs and SNSs, the Court finds that 
the common issues of fact in the federal securities law claims 
predominate over any individual issues. Certification is 
therefore warranted as to the federal securities law claims. 
 V. ORDER 
 For the reasons stated above, it is hereby 
 ORDERED that the objections (see Dkt. No. 110) filed by 

defendants Yieldstreet, Inc., Yieldstreet Management, LLC, YS 
ALTNOTES I, LLC, YS ALTNOTES II, LLC, and Michael Weisz 
(collectively, “Defendants”) to the Report and Recommendation 
(see Dkt. No. 109 (the “R&R”)) issued by Magistrate Judge 
Stewart D. Aaron in this action, upon the Court’s review and 
substantially for the reasons stated by Magistrate Judge 
Aaron, are hereby OVERRULED; and it is further 
 ORDERED that the R&R (see Dkt. No. 109) is hereby 
ACCEPTED and ADOPTED except as noted herein; and it is further 
 ORDERED that Defendants’ motion to strike (see Dkt. No. 
102) is hereby DENIED; and it is further 
 ORDERED that Plaintiff Lawrence Tjok’s (“Tjok”) motion 

for class certification and appointment as class 
representative (see Dkt. No. 87) is hereby GRANTED in part 
and DENIED in part as specified in the R&R; and it is further 
 ORDERED that pursuant to Federal Rule of Civil Procedure 
23, a class is hereby certified with respect to Count I, Count 
II, Count III, Count IV, and Count VII of the Corrected 
Amended Class Action Complaint (see Dkt. No. 51) in this 
action as follows: 
 All persons who purchased a Borrower Payment 
 Dependent Note (BPDN) issued by YS ALTNOTES I in 
 connection with the following offerings: (1) Vessel 
 Deconstruction I; (2) Vessel Deconstruction Fund 
 III; and (3) Louisiana Oil & Gas Fund, excluding 
 Defendants, any entities in which Defendants have 
 a controlling interest, Defendants’ agents and 
 employees, and any judge to whom this action is 
 assigned and any member of such judge’s staff and 
 immediate family. 
SO ORDERED. 
Dated: New York, New York 
 March 29, 2024 

 c Victor Marrero 
 UsSeDed' 

 32